Pedro ROMERO, Luis R. Acosta, Juan Arnaldi, Jr., Ana Angelet, Pablo E. Blanco, Iris Bland, Maria C. Bravo, Minerva Bravo, Marshall D. Burgess, Joan R. Campbell, Escolastico Cruz, Petra G. Dearce, Benjamin Dejesus, Evelyn Cruz Del Toro, Jorge L. Dones, Alfredo Ferrer, Brenda Ferrer, Benjamin Franco, Ashton F. Jardine, James W. Keech, Ernest W. Limper, Helen C. Limper, Juan G. Lugo, Aurea McFarquhar, Jose N. Morales, Sanders Odom, Floyd Olson, Helena Gomez Ortiz, Eugene L. Parker, Ileana Real, Pedro Reyes, Nayda M. Richardson, Raul D. Rivera, Maria Ines Rodriguez, Myrna Rodriguez, Valentino

M. Rodriguez, Juan N. Sanchez, Jerome F. Sicinski, Marilyn Stalzer, Julia Torres, Norma Vega, for themselves and on behalf of all others similarly situated, Cola Defense Committee of Puerto Rico, Inc., Plaintiffs–Appellants,

v.

The UNITED STATES of America, Defendant/Cross–Appellant.

Lloyd BENTSEN, Secretary of the Treasury, Michael D. Serlin, Assistant Commissioner of Field Operations of the Financial Management Service, United States Department of the Treasury,

and

United States Postal Service, Defendants,

v.

COMMONWEALTH OF PUERTO RICO, Third–Party Defendant/Appellee.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO; AFGE Locals 2408, 2608, 2614, 2698, 2837 and Faustino James Padilla, Plaintiffs–Appellants,

v.

Lloyd BENTSEN, Secretary of the Treasury, Defendant–Appellee.

AMERICAN POSTAL WORKERS UNION, AFL–CIO; Alberto Ortiz; Julio Blanch; Dimitre Padilla; Tomas Suarez and Jose L. Otero, Plaintiffs–Appellants,

v.

Lloyd BENTSEN, Secretary of the Treasury,

and

Marvin Runyon, Postmaster General, Defendants–Appellees.

Nos. 91–1440, 91–1460 and 92–1214.

United States Court of Appeals, Federal Circuit.

Oct. 19, 1994.

Alan F. Blakley, Mullendore & Watt, Missoula, MT, argued, for plaintiffs-appellants in appeal nos. 91–1440, –1460. With him on the brief, were William C. Watt and Robert C. Mullendore. Alexia Fay McCaskill, Staff

Counsel, American Federation of Government Employees, AFL–CIO, of Washington, DC, argued, for plaintiffs-appellants in appeal no. 92–1214. With her on the brief were Mark D. Roth, Gen. Counsel and Charles A. Hobbie, Deputy Gen. Counsel. Susan L. Catler, O'Donnell, Schwartz & Anderson, Washington, DC, argued, for plaintiffs-appellants, American Postal Workers Union, et al.

John J. McCarthy, Atty., Dept. of Justice, of Washington, DC, argued, for defendant/cross-appellant. With him on the brief were Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, David English Carmack, and James A. Bruton, Acting Asst. Atty. Gen. Of counsel was Kathryn A. Bleecker, Atty., Dept. of Justice.

Reina Colon DeRodriguez, Jorge E. Perez–Diaz and Anabelle Rodriguez–Rodriguez, of San Juan, PR, represented the third-party defendant/appellee, Com. of Puerto Rico.

Before ARCHER, Chief Judge,[1] and FRIEDMAN, Senior Circuit Judge, and PLAGER, Circuit Judge.

ARCHER, Chief Judge.

Pedro Romero *et al.* (Romero), the American Federation of Government Employees, AFL–CIO, *et al.* (AFGE), and the American Postal Workers Union, AFL–CIO, *et al.* (APWU), appeal from the summary judgment of the United States District Court for the District of Puerto Rico, Civil Nos. 89–0412(JAF), 90–1117(JAF) and 90–1173(JAF) (May 28, 1991). The district court upheld the validity of an agreement between the Secretary of the Treasury and the Commonwealth of Puerto Rico to withhold Puerto Rico income tax from the pay of federal employees, and dismissed claims for refund of pay alleged to have been withheld unlawfully pursuant to the agreement. We reverse and remand.

## I.

Under 5 U.S.C. § 5517 (1988), the Secretary of the Treasury is authorized to enter into an agreement with a "State" to withhold State income tax from the pay of federal employees subject to the tax.[2] For purposes of § 5517, the statute defines "State" to "mean[ ] a State or territory or possession of the United States." 5 U.S.C. § 5517(c).

In 1988, the Commonwealth of Puerto Rico requested that the Secretary enter into a withholding agreement under 5 U.S.C. § 5517, and on November 29, 1988, the Secretary and Puerto Rico entered for the first time into such an agreement. The appellants (plaintiffs below) are federal employees performing their duties in Puerto Rico whose Puerto Rico income taxes have been withheld from their federal pay according to the agreement.

On March 29, 1989, Romero and forty-one others jointly sued the United States in the Puerto Rico District Court seeking class certification, declaratory and injunctive relief, and back pay for amounts alleged to have been withheld unlawfully. *Romero v. Brady*, 764 F.Supp. 227 (D.P.R.). The United States impleaded the Commonwealth of Puerto Rico by third-party complaint dated September 13, 1989, seeking indemnification for any amounts determined to have been wrongfully withheld and that were passed on to Puerto Rico.

---

**1.** Chief Judge Archer assumed the office of Chief Judge on March 18, 1994.

**2.** The text of the section provides in relevant part:

§ 5517. *Withholding State income taxes*

  (a) When a State statute—

  (1) provides for the collection of a tax either by imposing on employers generally the duty of withholding sums from the pay of employees and making returns of the sums to the State . . .; and

  (2) imposes the duty . . . to withhold generally with respect to the pay of employees who are residents of the State;

the Secretary of the Treasury, under regulations prescribed by the President, shall enter into an agreement with the State within 120 days of a request for agreement from the proper State official. The agreement shall provide that the head of each agency of the United States shall comply with the requirements of the State withholding statute in the case of employees of the agency who are subject to the tax and whose regular place of Federal employment is within the State with which the agreement is made.

5 U.S.C. § 5517(a) (1988).

On April 10, 1989, AFGE, five of its affiliated locals, and three individuals jointly sued the Secretary in the United States District Court for the District of Columbia concerning the withholding of Puerto Rico income taxes from the pay of AFGE's bargaining unit members employed in the Commonwealth of Puerto Rico. *American Fed'n of Gov't Employees v. Brady,* Civil Action No. 89–0960 (D.D.C.) (*AFGE* ). APWU and five individuals filed a similar suit in the same district court on June 1, 1989. *American Postal Workers Union, AFL–CIO v. Brady,* Civil Action No. 89–1590 (D.D.C.) (*APWU* ). By separate orders, the District of Columbia District Court transferred the cases to the Puerto Rico District Court. The latter court consolidated the *AFGE, APWU,* and *Romero* cases.

In its May 28, 1994, opinion and order the district court dismissed the third-party complaint of the United States against the Commonwealth of Puerto Rico for lack of subject matter jurisdiction under the Butler Act, 48 U.S.C. § 872; dismissed all claims under the Back Pay Act, 5 U.S.C. § 5596, for lack of subject matter jurisdiction; granted summary judgment to the Secretary on all remaining causes of action; and denied the summary judgment motion of the plaintiffs. AFGE and APWU jointly appealed from the May 28, 1991 order; Romero filed a separate appeal from the order, and also appealed the district court's earlier order of December 26, 1989, denying Romero's motion for class certification. Because the appeals raise common issues, we have consolidated them for our disposition.

## II.

In passing, the government initially argues that this court has no jurisdiction over the appeal, and that we should transfer it back to the First Circuit. The First Circuit transferred the appeal to this court under 28 U.S.C. § 1631, holding that appellants' claim for a "refund" of monies wrongfully withheld from their pay stated at least in part a non-frivolous cause of action under the Back Pay Act, 5 U.S.C. § 5596, with jurisdiction founded on the Little Tucker Act, 28 U.S.C. § 1346(a)(2).

Where a district court's jurisdiction is based in whole or in part on a non-frivolous claim under the Little Tucker Act, exclusive jurisdiction of an appeal lies in this court. 28 U.S.C. § 1295(a)(2); *Banks v. Garrett,* 901 F.2d 1084, 1088 (Fed.Cir.1990). The First Circuit's transfer decision was therefore plausible, and we will not transfer the case back to the First Circuit. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 819, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988). Our jurisdiction having properly been invoked, we may review all other claims in this appeal including claims not based on the Little Tucker Act. *United States v. Hohri,* 482 U.S. 64, 75–76, 107 S.Ct. 2246, 2253, 96 L.Ed.2d 51 (1987); *Banks,* 901 F.2d at 1088.

## III.

The principal issue is whether the Commonwealth of Puerto Rico may be considered a "State or territory or possession of the United States" for purposes of 5 U.S.C. § 5517, such that the Secretary of the Treasury is authorized to enter into a withholding agreement with Puerto Rico. This issue involves statutory construction, a matter of law which we review *de novo.* *See Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 629 (Fed.Cir.1989).

Section 5517 authorizes the Secretary to enter into a withholding agreement with a "State," which is defined to mean "a State or territory or possession of the United States." 5 U.S.C. § 5517(c). Puerto Rico technically is none of these. It is a "Commonwealth," a status "unique ... in our federal system." *Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.,* 485 U.S. 495, 499, 108 S.Ct. 1350, 1352, 99 L.Ed.2d 582 (1988). Yet the district court held and the United States argues that because the statutory definition of "State" is broad and the historical treatment of Puerto Rico for purposes of federal law is somewhat imprecise, § 5517 is broad enough to encompass the Commonwealth of Puerto Rico. The district court relied on cases where Puerto Rico has been held to be a "state." *E.g., Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 670–75, 94

S.Ct. 2080, 2085–87, 40 L.Ed.2d 452 (1974) (defining Puerto Rico as a state for purposes of the Three–Judge Court Act); *Tenoco Oil Co. v. Department of Consumer Affairs,* 876 F.2d 1013, 1017 n. 9 (1st Cir.1989) (defining Puerto Rico as a state for purposes of the Takings Clause of the Fifth Amendment); *Cordova & Simonpietri Ins. Agency, Inc. v. Chase Manhattan Bank N.A.,* 649 F.2d 36, 41 (1st Cir.1981) (defining Puerto Rico as a state for purposes of the Sherman Anti–Trust Act and holding that whether Puerto Rico can be considered a "state" varies according to the particular statute).

Based on precedent, the unique and historically ill-defined Commonwealth status of Puerto Rico, and the fact that "State" is defined in § 5517 broadly to mean more than a "state," we agree with the government that the plain language of the statute does not immediately tell us whether Puerto Rico may be considered a "State or territory or possession" within 5 U.S.C. § 5517. In this regard, we find the events surrounding the ·enactment of 5 U.S.C. § 5517 and the creation of Puerto Rico's Commonwealth status particularly instructive. *Puerto Rico v. Shell Co.,* 302 U.S. 253, 258, 58 S.Ct. 167, 169, 82 L.Ed. 235 (1937) (to determine treatment of Puerto Rico for purposes of a law look to, among other things, the circumstances under which the words of the law were employed).

Senate Bill 1999, the bill leading to the enactment of 5 U.S.C. § 5517, was introduced on August 14, 1951. That version defined "State" to mean "any State, Territory, or possession of the United States, or any political subdivision thereof." *See* 97 Cong. Rec. 9916 (1951) (introducing S. 1999, 82d Cong., 1st Sess.); S.Rep. No. 1309, 82d Cong., 2d Sess. (Mar. 14, 1952), *reprinted in* 1952 USCCAN 2360; H.R.Rep. No. 2474,

82d Cong., 2d Sess. (July 3, 1952), *reprinted in* 1952 USCCAN 2433. At the time that bill was introduced, Puerto Rico was considered to be an unincorporated territory or possession of the United States.[3] *E.g., Puerto Rico v. Shell,* 302 U.S. at 258–59, 58 S.Ct. at 169–70; *New York ex rel. Kopel v. Bingham,* 211 U.S. 468, 476, 29 S.Ct. 190, 192, 53 L.Ed. 286 (1909). "Incorporated territories" are territories incorporated into the Union having "the potentialities of statehood," whereas "unincorporated territories" are merely "possessions of the United States not thought of as future States." *See Granville–Smith v. Granville–Smith,* 349 U.S. 1, 5, 75 S.Ct. 553, 555, 99 L.Ed. 773 (1955).

On July 3, 1952, Congress approved the proposed Constitution of the Commonwealth of Puerto Rico, which thenceforth changed Puerto Rico's status from that of an unincorporated territory to the unique one of Commonwealth. Joint Resolution of July 3, 1952, ch. 567, 66 Stat. 327; *United States v. Quinones,* 758 F.2d 40, 42 (1st Cir.1985); *Cordova & Simonpietri Ins. Agency,* 649 F.2d at 41. The change to Commonwealth carried with it "significant changes in Puerto Rico's governmental structure" and its relationship with the United States. *See Calero–Toledo,* 416 U.S. at 672, 94 S.Ct. at 2086.

On July 4, 1952, one day after Puerto Rico had become a Commonwealth, Senate Bill 1999 was amended to *narrow* the definition of "State" by deleting the language "or possession or any political subdivision thereof." *See* 98 Cong.Rec. 9373 (1952). The Secretary was thereby authorized to enter into withholding agreements only with "any State or Territory." On July 17, 1952, Congress enacted this amended version into law. Act of July 17, 1952, ch. 940, 66 Stat. 765.[4]

---

**3.** Puerto Rico was ceded to this country following the Spanish–American War in the Treaty of Paris, 30 Stat. 1754 (1898). *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 670, 94 S.Ct. 2080, 2085, 40 L.Ed.2d 452 (1974).

**4.** The statute as originally enacted stated that where

(1) the law of any State or Territory provides for the collection of a tax by imposing upon employers generally the duty of withholding sums from the compensation of employees and

making returns of such sums to the authorities of such State or Territory, and

(2) such duty to withhold is imposed generally with respect to the compensation of employees who are residents of such State or Territory,

then the Secretary of the Treasury, pursuant to regulations promulgated by the President, is authorized and directed to enter into an agreement with such State or Territory within one hundred and twenty days of the request for agreement from the proper official of such State or Territory. Such agreement shall pro-

This is therefore not a case in which we must decide whether or not a federal law that was effective and applicable to Puerto Rico prior to Puerto Rico's attainment of Commonwealth status can be construed so as to continue to apply to Puerto Rico. *See Cosentino ex rel. NLRB v. International Longshoremen's Ass'n,* 126 F.Supp. 420, 421–22 (D.P.R.1954). The relatively straightforward issue in this case is whether, in legislating § 5517, Congress intended to confer on the Secretary the authority needed to enter into a withholding agreement with the Commonwealth of Puerto Rico. We must assume that when Congress narrowed Senate Bill 1999 and enacted the narrowed version into law, giving the Secretary authority to enter into agreements with only "States" and "Territories," Congress was well aware that Puerto Rico was a Commonwealth and was not an unincorporated territory or possession of the United States. *See Miles v. Apex Marine Corp.,* 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990). It is clear therefore that under the predecessor to 5 U.S.C. § 5517, the Commonwealth of Puerto Rico was not included in the class of political entities with which the Secretary was authorized to enter into withholding agreements.

Since enacting the withholding agreement statute, Congress has amended it several times, but has never changed the statute to authorize the Secretary to enter into withholding agreements with the Commonwealth of Puerto Rico. In 1966, Congress broadened the statute to permit the Secretary to enter into withholding agreements with "possessions of the United States," and codified the law at 5 U.S.C. § 5517. *See* Act of September 6, 1966, Pub.L. No. 89–554, § 5517(c), 80 Stat. 378, 478. Congress did not expressly include the Commonwealth of Puerto Rico within this broader class. In subsequent amendments to § 5517, Congress has expanded coverage to more categories of personnel, but not to more classes of political entities. *See* Tax Reform Act of 1976, Pub.L.

No. 94–455, § 1207(a), 90 Stat. 1520, 1704 (permitting withholding agreements to include members of the Armed forces), *as amended by* National Defense Authorization Act for Fiscal Years 1988 and 1989, Pub.L. No. 100–180, § 505(1), 101 Stat. 1019, 1086 (1987) (broadening the scope of § 5517 to cover Armed Forces personnel receiving National Guard and reserve drill pay).

In stark contrast to its action regarding § 5517, Congress amended 5 U.S.C. § 5518, a similar law in Title 5, to include expressly Puerto Rico. Section 5518 as initially enacted in 1956 permitted the Secretary of Defense to enter into an agreement with a "State or Territory" to withhold pay from civilian National Guard employees for contribution to state retirement plans. *See* Act of June 15, 1956, ch. 390, 70 Stat. 283. In 1961, Congress amended the law expressly to apply to "any State or territory or Puerto Rico." *See* Act of September 13, 1961, Pub.L. No. 87–224, 75 Stat. 496, *as amended by* Act of September 6, 1966, Pub.L. No. 89–554, § 5518, 80 Stat. 378, 479 (defining "State" to be "a State or territory or possession of the United States including the Commonwealth of Puerto Rico.").

From 1953 until the 1988 withholding agreement with the Commonwealth of Puerto Rico at issue today, the Secretary of the Treasury consistently interpreted § 5517 as *not* authorizing him to enter into a withholding agreement with the Commonwealth, and declined several requests by Puerto Rico to enter into such an agreement. *See* Letter from Thomas J. Lynch, Acting Secretary of the Treasury, to the Honorable Carlton Skinner, Governor of Guam (Jan. 19, 1953) (copy in Romero Jt.App. at 256) (advising the Governor of Guam that the withholding agreement statute would not permit withholding of Guam taxes because as an "unincorporated territory" Guam was not a "State or Territory" within the act); Treasury Mem. (Apr. 18, 1972) (advising that Puerto Rico does not fit "under the definition of a State, Territory, or

---

vide that the head of each department or agency of the United States shall comply with the requirements of such law in the case of employees of such agency or department who are subject to such a tax and whose regular place of Federal employment is within the State or

Territory with which such agreement is entered into. No such agreement shall apply with respect to compensation for service as a member of the Armed Forces of the United States.
Act of July 17, 1952, ch. 940, 66 Stat. 765.

Possession" in § 5517, and "enjoys a unique position which precludes [Treasury] from withholding Puerto Rican taxes"); Treasury Gen.Couns.Mem. (Nov. 3, 1983) (advising that since 1953 the Treasury Department interpreted the withholding agreement statute to include only a state or territory, and excludes the Commonwealth of Puerto Rico).

We disagree with the district court's characterization of the Treasury Department interpretations as "misguided." Each of the several documents evidencing the Treasury Department's original interpretation of the withholding agreement statute appears well-reasoned and consistent with the language of the statute. The agency's contemporaneous, longstanding, and reasoned interpretation that Puerto Rico is not a "State" within 5 U.S.C. § 5517 thus persuades us more than does the agency's relatively recent flip-flop made without much justification on the record at all. *See Madison Galleries,* 870 F.2d at 631.

Accordingly, we hold that the term "State" in 5 U.S.C. § 5517 does not include within its meaning the Commonwealth of Puerto Rico. The Secretary's withholding agreement with the Commonwealth of Puerto Rico was therefore made outside the authority conferred by 5 U.S.C. § 5517, and is unlawful and void.[5]

### IV.

A. The appellants further seek to have the United States refund all monies withheld from their pay pursuant to the invalid withholding agreement. Jurisdiction for this monetary claim against the United States is asserted to lie under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). The Little Tucker Act by itself does not create any substantive right of relief enforceable against the United States. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). That right must be found in some other source of law such as the "Constitution, or any Act of Congress, or any regulation of an executive department." *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983).

The appellants cite the Back Pay Act, 5 U.S.C. § 5596(b)(1), as that source of law.

The Back Pay Act provides in pertinent part:

(b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination ... is found *by appropriate authority* under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay ... of the employee—(A) is entitled ... (i) [to back pay].

5 U.S.C. § 5596(b)(1)(A)(i) (1988) (emphasis added). The parties agree that the withholding of pay from employees may be classified as a "personnel action." *See* 5 U.S.C. § 2302(a)(2)(A)(ix); 5 U.S.C. § 5596.

The United States concedes that under this court's decision in *Alaniz v. OPM,* 728 F.2d 1460 (Fed.Cir.1984), the Back Pay Act would provide the right asserted by appellants. In *Alaniz,* we reversed a decision of the Office of Personnel Management reducing Cost of Living payments to federal employees as made pursuant to an invalid rule, and held that the affected federal employees were entitled to recover for the reductions under the Back Pay Act. 728 F.2d at 1470; *cf. Clincher v. United States,* 499 F.2d 1250, 1252 (Ct.Cl.1974) ("We have [Tucker Act jurisdiction] since the plaintiffs are suing for amounts due them as pay earned during their United States Government employment" but allegedly wrongfully withheld for state income tax purposes.).

The government argues, however, that to the extent *Alaniz* supports appellants' recovery in this case, it is no longer good law under the Supreme Court's decision in *United States v. Fausto,* 484 U.S. 439, 454, 108 S.Ct. 668, 677, 98 L.Ed.2d 830 (1988). For that proposition, the government cites the following passage appearing at the end of *Fausto:*

[W]e find that under the comprehensive and integrated review scheme of the [Civil

---

5. Consequently, we need not reach any of appellants' numerous arguments regarding alleged defects in the regulatory and administrative process.

Service Reform Act of 1978], the [Court of Federal Claims] (and any other court relying on Tucker Act jurisdiction) is not an "appropriate authority" to review an agency's personnel determination.... [S]uch an authority would include the agency itself, or the [Merit Systems Protection Board] or the Federal Circuit where those entities have the authority to review the agency's determination.

484 U.S. at 454, 108 S.Ct. at 677. The government argues that, according to this passage, district courts universally have no power to determine whether a "personnel action" by a federal employer is justified. The *only* entity with such power in the government's view "is the employee's agency itself, the Merit Systems Protection Board, and then by appeal the Federal Circuit." "Only if a plaintiff is first armed with an adjudication that a personnel action is unjustified," goes the government's argument, "can the jurisdiction of the [Court of Federal Claims] or a district court be invoked to enforce a Back Pay Claim." Brief for United States in Romero's Appeal at 13.

If Supreme Court cases were about creating legal rules through nifty bits and pieces of language, the government's argument might seem attractive. However, when the passage cited by the government is read in the context of the *Fausto* case, the government's argument loses any of its facial appeal. *Fausto* was a lawsuit by a "nonpreference eligible in the excepted service" challenging the merits of an agency's decision to remove him from the service. He could not litigate his removal in the Merit Systems Protection Board (MSPB) because the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 *et seq.* (codified as amended in various sections of 5 U.S.C.) (CSRA), provided no right of review to nonpreference eligibles in the excepted service. 484 U.S. at 446–47, 108 S.Ct. at 673. Having suffered defeat in the MSPB, Fausto sued the United States in the then-Claims Court under the Back Pay Act making the same challenge he could not make in the MSPB. The Supreme Court held that the CSRA not only did not provide Fausto a right of review in the MSPB, but also *precluded* a right of review in the district courts or the Claims Court

under the Tucker Act and Back Pay Act. 484 U.S. at 448, 108 S.Ct. at 673. This explains the Court's statement in the cited passage that the district court is not an appropriate authority to make a personnel determination *"under the ... CSRA."*

■ Thus *Fausto* does not hold that the CSRA makes impermissible "judicial review of *any* action affecting federal employees." *Bosco v. United States,* 931 F.2d 879, 883 (Fed.Cir.1991). Rather, *Fausto* holds that the CSRA provides "the only means of review as to the types of adverse personnel action specifically *covered* by the CSRA." *Id.* The present case involves a type of personnel action—withholding of pay for income tax purposes—that "is not covered at all by the CSRA, for any employees." *Id.* There is no reason to suppose that the CSRA was intended to preclude this sort of action under the Back Pay Act and therefore *Fausto* is inapplicable. Accordingly, we hold that appellants' claims for a refund are cognizable in the district court under the Little Tucker Act and Back Pay Act.

■ B. This does not, however, end the matter of refunds. In *Clincher v. United States,* 499 F.2d 1250, 1253–54 (Ct.Cl.1974), one of this court's predecessor courts, the Court of Claims, held that the United States is not liable for state income taxes erroneously withheld from federal employees' salaries and paid over to the state if, under state law, private employers would not be liable. This was so even though the employees otherwise had a cause of action under the Tucker Act for recovery of back pay. *Id.* at 1252. The Court of Claims reasoned that the employee's sole recourse in such circumstances is the state's judicial and administrative mechanisms for the recovery of overpayment of tax, and not suit against the United States.

The government cites Puerto Rico law, P.R.Laws Ann. tit. 13, § 3141(k), as providing that an employer shall not be liable to an employee for any taxes erroneously withheld. Therefore, the government argues that under the authority of *Clincher* the United States should not be liable to the appellants. AFGE and APWU concede the authority of *Clincher,* but respond that under Puerto Rico

law there is a short lag between the time the employer (here the United States) pays its employees their salary and when the employer must turn any withheld moneys over to Puerto Rico. *See* P.R.Laws Ann. tit. 13, § 3141(i). AFGE and APWU thus argue that under *Clincher* the United States must refund only those moneys it has wrongfully withheld under the invalid agreement and not yet paid over to Puerto Rico. Romero has argued that *Clincher* does not apply because the withholding agreement in *Clincher* was not held invalid.

We are persuaded that *Clincher* precludes the refund of any moneys that the United States has paid over to Puerto Rico, and therefore only moneys not yet paid over shall be refunded pursuant to appellants' Back Pay Act claims. The case is remanded for further proceedings and a determination of what if any moneys are due the appellants.

## V.

The government raises in passing an argument that the postal worker plaintiffs/appellants are exempt from the Back Pay Act under 39 U.S.C. § 410(a). Romero correctly argues in response that the law is not settled in this regard. *See White v. United States Postal Service*, 931 F.2d 1540, 1542 n. 1 (Fed.Cir.1991). The district court made no ruling on this matter. We decline to decide the issue on such a sparse record and minimal argument. The parties may take the matter up on remand.

Similarly, Romero says that he "wishes" to appeal the district court's order denying his class certification motion, but that the district court in fact never ruled on Romero's motion and instead simply granted the United States's opposition to the motion without offering any reasons. The United States devotes a footnote in its brief to respond to this issue. The parties may take the matter up on remand.

Finally, the United States cross-appeals from the order of the district court dismissing its third-party complaint against Puerto Rico for lack of subject matter jurisdiction under the Butler Act, 48 U.S.C. § 872. The United States's complaint was, and its cross-appeal is, premised on the district court's or this court's holding that the United States must return withheld Puerto Rico taxes which have been "concurrently turned over to Puerto Rico." Since we hold that the United States is not liable for any moneys that it has turned over to Puerto Rico, we have no need to decide the government's cross-appeal.

The parties will bear their respective costs.

*REVERSED* and *REMANDED*.