Maurice M. ABRAMSON,
et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 96–338C.

United States Court of Federal Claims.

Nov. 18, 1998.

William W. Thompson, II, Washington, DC, for plaintiff. Michael S. Wolly, Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C., of counsel.

Hillary A. Stern, Washington, DC with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## ORDER

MILLER, Judge.

This case is before the court for consideration of plaintiffs' motion for summary judgment as to liability on Count I of the First Amended Complaint and plaintiffs' separate motion for resolution of damages. The following issues shall be decided: (1) whether the court's prior rulings on June 6, 1997, and January 22, 1998, mandate judgment in plaintiffs' favor on their claims for monetary pay pursuant to 44 U.S.C. § 305 (1994); (2) whether plaintiffs should be limited to their straight hourly wage for overtime compensation; (3) whether, and to what extent, a compensatory time offset is appropriate in calculating damages; (4) whether an offset should be made for a half-hour unpaid lunch period; and (5) whether plaintiffs are entitled to interest on back pay. Argument is deemed unnecessary.

## BACKGROUND

No facts relevant to the subjects of the motions are in dispute. Plaintiffs are employees of the Government Printing Office (the "GPO") holding positions as group chiefs, assistant forepersons, and forepersons. Plaintiffs seek recovery of pay at 150% their normal rate for overtime work from June 11, 1995, through June 6, 1998. During this period plaintiffs received overtime compensation in the form of one hour of compensatory time for each hour of overtime worked. Plaintiffs alleged that this form of compensation was improper under the Kiess Act, 44 U.S.C. § 305, which gives the Public Printer discretion to hire employees for the GPO and to establish pay rates, including compensation for overtime work. Plaintiffs commenced suit in this court on June 10, 1996. A more detailed rendition of the facts of this case was provided in an earlier opinion and will not be repeated here. *See Abramson v. United States*, 40 Fed.Cl. 204, 206 (1998) (granting plaintiffs' cross-motion for summary judgment on liability under 5 U.S.C. § 5544(a) (1994), and defendant's motion as to supervisory printing specialists paid on an annual basis; *see also Abramson v. United States*, 39 Fed.Cl. 290 (1997) (denying plaintiff's motion to compel because conversations relating to overtime policy were covered by deliberative process privilege).

Defendant filed a partial motion to dismiss plaintiff's Kiess Act claims on February 24, 1997. In an unpublished order entered on June 6, 1997, the court denied defendant's motion and determined that the term " 'compensation' as used in subsection (a) [of 44 U.S.C. § 305] means monetary compensation," because subsection (b) limits compensatory time for overtime work to employees paid on an annual basis. The court further determined that compensation for overtime work performed by craft workers, whose rates and wages are set by the Public Printer, "must be monetary."

Defendant then moved to dismiss Count Four of the First Amended Complaint, which sought relief pursuant to 5 U.S.C. § 5544(a), which provides that specified employees are entitled to overtime pay. The court issued an opinion on January 22, 1998, *see Abramson*, 40 Fed.Cl. at 204, analyzing defendant's contentions that plaintiffs failed to state a claim for which relief could be granted because plaintiffs did not fall within the scope of 5 U.S.C. § 5544(a). Although defendant presented reasonable arguments, the court declined to consider the application of this statute in a vacuum. *See id.* at 206–11. Rather, the court determined that for several decades the GPO has construed section 5544(a) to encompass its employees. *See id.* at 208. Evidence of this construction was replete throughout the GPO's documents dealing with employees, as well as the legal interpretations contained in those documents. *See id.* at 209–11. Furthermore, the court determined that group chiefs, assistant forepersons, and forepersons are " 'craft uprate' employees," whose salaries are set by a formula applied to the negotiated salaries of

journeypersons and, thus, are not within the ambit of section 305(b), which authorizes compensatory time in lieu of overtime pay for employees paid on an annual basis. *Id.* at 213.

## DISCUSSION

### 1. *Rate of overtime pay*

The prior rulings in this matter constitute the law of the case. "The doctrine applies not only to issues discussed and decided but also those decided by necessary implication." *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1278 (Fed.Cir.1988). *See generally Mendenhall v. Barber–Greene Co.,* 26 F.3d 1573, 1582 (Fed.Cir.1994) (discussing law of case doctrine). Thus, to promote judicial economy, the court will not permit the parties to relitigate the foregoing issues.

Plaintiffs contend that the court's two prior rulings dictate that (1) under the Kiess Act, payment must be monetary, and (2) plaintiffs were entitled to summary judgment on their claim for overtime entitlement pursuant to 5 U.S.C. § 5544(a), because group chiefs, forepersons, and assistant forepersons do not fall within the purview of 44 U.S.C. § 305(b). Consequently, plaintiffs assert that the law of the case mandates judgment in their favor with regard to liability on Count I of the First Amended Complaint, which claims overtime pay pursuant to 44 U.S.C. § 305(a) (1994), as well as overtime payment at a rate of time and one half. Plaintiffs also note that overtime pay at a rate 150% above hourly wages consistently was used by the Public Printer "for at least 71 years before the ill-advised switch to comp time." Plf's Br. filed Oct. 19, 1998, at 2.

Defendant counters by suggesting that the court reconsider its prior determination and contends that 44 U.S.C. § 305(b) provides "the Public Printer the requisite authority to grant compensatory time in lieu of overtime pay to plaintiffs." Def's Br. filed Sept. 24, 1998, at 3. Defendant further argues that, even if the court grants plaintiffs' motion with regard to liability on Count I, no provision in the Kiess Act entitles plaintiffs to overtime pay equal to 150% of their normal wage. Rather, defendant asserts that plaintiffs should be limited in their recovery to their straight hourly wage as the only wage determined by the Public Printer to be in the Government's best interest. Defendant would also preclude reliance on any other statute to establish an overtime rate of 150%, including 5 U.S.C. § 5544(a). In so doing, defendant takes issue with the court's prior analysis concerning the evolution of section 5544(a) and notes that "it cannot be concluded that section 5544(a) by implication repeals the Public Printer's authority to set the overtime rates of pay for plaintiffs." Def's Br. filed Sept. 24, 1998, at 5.

The Kiess Act, 44 U.S.C. § 305, provides, in pertinent part:

(a) The Public Printer may employ journeymen, apprentices, laborers, and other persons necessary for the work of the Government Printing Office at rates of wages and salaries, *including compensation for night and overtime work,* he considers for the interest of the Government and just to the persons employed, except as otherwise provided by this section. . . .

(b) The Public Printer may grant an employee paid on an *annual basis* compensatory time off from duty instead of overtime pay for overtime work.

(Emphasis added.) Although whom to employ and the rates of wages are discretionary matters within the Public Printer's control, 44 U.S.C. § 305 directs that compensation be given, *inter alia,* for overtime work. In light of the court's earlier rulings that group chiefs, forepersons, and assistant forepersons do not fall within section 305(b) and that section 305(a) is a money-mandating statute, summary judgment is properly granted in plaintiffs' favor with regard to liability on Count I of the First Amended Complaint.

The question thus devolves to the rate at which overtime pay will be calculated. Defendant advances that the only rate established by the Public Printer to be in the Government's interest is plaintiffs' straight hourly wage and, therefore, the straight wage should also serve as the rate for any

overtime compensation.[1] Plaintiffs correctly rejoin that this argument is belied by a reading of the undisputed record in this case. Specifically, plaintiffs cite to GPO Notice 640–305 (June 5, 1995), which informed plaintiffs that they would no longer be compensated "at current overtime rates of 150 percent, but with compensatory time off" and urge the court to consider the GPO's past practice over the last seven decades. Plaintiffs also emphasize that permitting the Public Printer now to equate overtime pay with straight time pay "is an attempt to rewrite decades of consistent statutory application." Plfs' Br. filed Oct. 19, 1998, at 3.[2] According to plaintiffs, the plain language of the statute contradicts defendant's interpretation that overtime pay is the equivalent of straight time pay, because the statute explicitly directs that compensatory time may be granted to employees paid on an annual basis instead "of overtime pay for overtime work." 44 U.S.C. § 305(b).

Plaintiffs are entitled to summary judgment on the amount of overtime pay for overtime work. It is clear that plaintiffs were paid at a rate of 150% their straight time wages for overtime work prior to the promulgation of a rule providing for compensatory time in exchange for overtime work. Upon finding that 44 U.S.C. § 305 was a money-mandating statute, this court determined that compensatory time may not be used as payment for overtime work. Consequently, the GPO's regulation regarding compensatory time is invalid. Because the GPO's prior practice has been payment at a rate of 150% for overtime work, which would seemingly have continued absent this new rule, plaintiffs are entitled to compensation at a rate of 150% their straight wages as damages. See Alaniz v. Office of Personnel Management, 728 F.2d 1460, 1470 (Fed.Cir.

1984) (finding that no legal effect may be given to invalidated modifications of cost-of-living allowances and, thus, policy in place prior to modifications continued to operate). Moreover, the court's January 22, 1998 opinion explicitly found that plaintiffs were employees within the meaning of 5 U.S.C. § 5544(a), which provides for overtime pay at a rate of one and one half.

### 2. Damages

Additional issues arise with regard to calculating damages, including (1) the applicable statute under which plaintiffs may recover overtime pay at 150% of straight wages, (2) whether the Government is entitled to an offset on the amount due, and (3) whether plaintiffs are entitled to interest on back pay.

Plaintiffs contend that they are entitled to overtime pay for all overtime work at 150% of their normal wage pursuant to 5 U.S.C. § 5544(a). Noting that compensatory time may not be substituted for overtime pay, plaintiffs maintain that, according to the statute, no offset can be made for compensatory time "in any form or amount." Plf's Br. filed Aug. 27, 1998, at 4. Plaintiffs remind that the court has rejected defendant's argument that compensatory time is the equivalent of monetary compensation.[3] Furthermore, plaintiffs have asserted their rights to damages pursuant to the Back Pay Act, 5 U.S.C. § 5596(a)(4), (b)(1) (1994), which provides, inter alia, for recovery for unjustified or unwarranted personnel actions, including the failure to pay GPO employees. See Romero v. United States, 38 F.3d 1204, 1210 (Fed.Cir. 1994); Alaniz, 728 F.2d at 1470. Contending that the Back Pay Act is applicable as a result of the violation of both the Kiess Act and 5 U.S.C. § 5544(a), plaintiffs argue that no offset is provided for or permissible.

1. In contrast to defendant's position with regard to liability, defendant concedes, in its response to plaintiffs' motion for resolution of damages, that plaintiffs are due overtime pay at a rate of time and one half based upon the overtime wage rate in 44 U.S.C. § 5544.

2. Plaintiffs cite to a general pay administration document, GPO Instruction 640.7B (Mar. 19, 1979), in support of its contentions. This instruction provides that "[t]he overtime rate of pay for both annual salaried and hourly rated

employees is 150% of the basic hourly rate received on the date on which overtime is worked. The 150% is made up of the basic hourly rate (100%) and the overtime premium rate (50%)."

3. Because compensatory time, with regard to plaintiffs, is not provided for in either the Kiess Act or 5 U.S.C. § 5544, plaintiffs insist that an offset for compensatory time contravenes the plain language of these statutes.

Plaintiffs also seek interest as provided for in the Back Pay Act for any damage award. 5 U.S.C. § 5596(b)(2)(A).

Defendant claims entitlement to recoup erroneous overpayments as an offset to any amounts due plaintiffs, particularly as plaintiffs' pay included monies paid for compensatory time, which is the equivalent of partial payment for overtime work. Defendant relies on *D'Camera v. District of Columbia*, 722 F.Supp. 799 (D.D.C.1989), in which compensatory time in lieu of overtime pay was found to be a violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1982), as amended by Pub.L. No. 99–150 (1985) (the "FLSA"). The court in *D'Camera* permitted deduction of the monetary value of compensatory time from the amount of overtime pay that was owed to plaintiffs. Finding that plaintiffs were not entitled to a windfall, the court noted that they had "unquestionably received partial compensation for their overtime hours" by receiving the monetary value of compensatory time. 722 F.Supp. at 803. Although plaintiffs contest this interpretation of *D'Camera* and point out that the court rationalized its decision from a balance of back pay and liquidated damages in an effort to make plaintiffs whole, defendant explains that the court merely found that the combination of damages adequately compensated plaintiffs for the violation of the FLSA. Even though liquidated damages are permissible under the FLSA, neither 5 U.S.C. § 5544 nor 44 U.S.C. § 305 provides for similar relief. As such, defendant asserts that plaintiffs' recovery is limited to the actual back pay owed to plaintiffs.

The Government is entitled to an offset when able to demonstrate that plaintiffs owe the Government money. *See Citizens Bank v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); *Bianco v. United States*, 171 Ct.Cl. 719, 731 (1965) (holding Government entitled to recover erroneous payments). Notwithstanding plaintiffs' contentions to the contrary, defendant properly has asserted an offset in this instance. Although it was not in accordance with law for the GPO to instruct that plaintiffs would be given compensatory time rather than overtime pay, plaintiffs did receive monetary compensation for overtime work when paid for using compensatory time. Under no circumstances should plaintiffs receive a windfall at the Government's expense.[4] The fact that the analysis in *D'Camera* involved a different statute does not invalidate the reasonableness of an offset in the Government's favor for partial payment. *See generally In re Murray*, 59 Comp. Gen. 246 (1980) (holding value of expended compensatory time to be proper offset); *Secretary of the Interior*, 53 Comp. Gen. 264 (1973) (finding offset appropriate for spent compensatory time).

The principle is applicable with equal force in this case in order to avoid a windfall. Therefore, although plaintiffs are entitled to overtime pay at a rate of 150% for all overtime work, plaintiffs' recovery will reflect a deduction for each hour of compensatory time used, whereby plaintiffs will receive 150% compensation for unused hours of compensatory time and 50% for expended hours of compensatory time.[5] Because the instruction was invalid, however, plaintiffs will not be penalized under the use-or-lose policy enunciated in the GPO's compensatory time rule, and each week will stand alone for purposes of this calculation.[6]

---

4. Plaintiffs have not moved for summary judgment on their FLSA claims.

5. Plaintiffs will not be permitted to recover overtime pay for all overtime hours worked from January 22, 1998, to June 6, 1998. Although the pace of change by the Government gives the appearance of intransigence, plaintiffs, who have used compensatory time, have received partial monetary compensation for overtime work. Plaintiffs are not entitled to double recovery and will be limited to the foregoing formula in calculating overtime pay for the entire period at issue.

6. Plaintiffs' contentions that no offset is proper following the Federal Circuit's decision in *Lanehart v. Horner*, 818 F.2d 1574 (Fed.Cir.1987), is inapposite, particularly because the court's formula, noted above, prevents dual compensation and does not diminish plaintiffs' overtime wage of time and one half. Here, the court is concerned that plaintiffs do not recover 250% of their respective wages. Contrary to plaintiffs' assertions, the court's formula does not conflict with the holding in *Lanehart*, to wit, "the 'leave with pay' statutes in their purpose and effect prevent any reduction in the customary and regular pay." *Id.* at 1583.

■ Defendant also contends that an offset should be made for 30-minute lunch periods during which time plaintiffs were not working and consequently should not have received compensation. Defendant claims that plaintiffs were improperly paid for this lunch period during much of the period of time in question—June 5, 1995, to March 31, 1997. Plaintiffs challenge this offset as improper, but also argue that the Government has waived any right to this offset by failing to raise it earlier. Although the Government does have a right to offset a damage award by subtracting compensation for lunch periods which was erroneously given, *see, e.g., Baylor v. United States*, 198 Ct.Cl. 331, 365 (1972) (finding no offset for lunch period if employees required to remain on duty at post); *Agner v. United States*, 8 Cl.Ct. 635, 638 (1985), *aff'd* 795 F.2d 1017 (Fed.Cir.1986) (finding that Government was entitled to offset duty-free lunch periods against activities prior or subsequent to employee's normal shift of duty), defendant failed timely to raise this argument.

Defendant is charged with the duty of lodging offset defenses in a prompt and non-prejudicial fashion. The Court of Claims has held that "any undue delay on the part of the government will result in the denial of the right to raise setoff defenses. In other words, [the court] hold[s] that the defense must be raised at the earliest possible stage in the proceedings." *St. Louis–San Francisco Ry. v. United States*, 189 Ct.Cl. 280, 282, 417 F.2d 1359, 1360 (1969); *see International Fidelity Ins. Co. v. United States*, 27 Fed.Cl. 107, 110 (1992) (holding defendant entitled to assert setoff due to pretrial stage of proceedings and absence of prejudice to plaintiff). As there was no prior indication that defendant would seek this additional offset, defendant will not be permitted to rely on this defense to oppose plaintiffs' damages motion or to exercise a right to this offset in calculating damages.[7]

The parties next contest whether interest is appropriate in the damages calculation. Defendant correctly notes that neither 5

U.S.C. § 5544 nor the Kiess Act provides for interest on the recovery of overtime pay. Plaintiffs rely upon the Back Pay Act, 5 U.S.C. § 5596(b)(1), (b)(2)(A), which provides that employees, "affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials," will receive back pay with interest. Defendant counters that plaintiffs have not been affected by the kind of adverse personnel action contemplated by the Back Pay Act because of the "[m]ere failure by a government agency to pay money due." *Bell v. United States*, 23 Cl.Ct. 73, 77 (1991).

Defendant also contests the propriety and applicability of the Back Pay Act to this calculation. Conceding the court's jurisdiction under 5 U.S.C. § 5544, and noting that this statute lacks any provision for interest, defendant objects to consideration of the Back Pay Act in this instance because no void exists for this remedial statute to fill. In other words, defendant asserts that plaintiffs, who are entitled to recover under 5 U.S.C. § 5544, should not be entitled to invoke the Back Pay Act. Plaintiffs argue that the money-mandating nature of the statutes at issue is sufficient to fall within the confines of the Tucker Act, 28 U.S.C. § 1491(a)(1) (West 1994 & Supp.1998), and thus confers jurisdiction upon the court. *See United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Plaintiffs also claim entitlement to the greater of the relief provided by the Back Pay Act or 5 U.S.C. § 5544. *See Alexander v. United States*, 32 F.3d 1571, 1577–78 (Fed.Cir.1994) (discussing potential offset to overtime pay under FLSA and noting limitation on recovery to greater of FLSA or other statutorily authorized compensation); *Agner*, 8 Cl.Ct. at 636 ("[W]here there is an inconsistency between the statutes, employees are entitled to the greater benefit."); *see also Abbott v. United States*, 41 Fed.Cl. 553, 556 (1998) ("The member is

---

7. The parties have had ample time over the past two years and during the prior two dispositive motions to consider their positions and put forth available arguments. Moreover, the most recent Joint Status Report, which lists the remaining matters at issue, fails to make any mention of this potential offset. Therefore, the court will not allow this offset.

entitled to overtime pay under whichever authority provides the greater entitlement.").

■ The court must consider initially whether its jurisdiction has been properly invoked. In *United States v. Fausto,* 484 U.S. 439, 454, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the Supreme Court determined that "the Claims Court (and any other court relying on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency's personnel determination" in light of the Civil Service Reform Act of 1978, Pub.L. No. 95–454,92 Stat. 1111 (1978) (codified as amended in scattered sections of 5 U.S.C.) (the "CSRA"). The Court did not eliminate the statutory remedy provided in the Back Pay Act, but, rather, held that entities possessing the authority to review personnel determinations include the agency itself, the Merit Systems Protection Board, and the Federal Circuit. *See Fausto,* 484 U.S. at 454, 108 S.Ct. 668. The Federal Circuit determined subsequently that *Fausto* did not divest the Court of Federal Claims of jurisdiction in all instances. *See Bosco v. United States,* 976 F.2d 710, 714 (Fed.Cir.1992) ("leav[ing] undisturbed what the [CSRA] does not expressly extinguish"). *"Fausto* holds that the CSRA provides 'the only means of review as to the types of adverse personnel action specifically *covered* by the CSRA.'" *Romero,* 38 F.3d at 1211 (quoting *Bosco v. United States,* 931 F.2d 879, 883 (Fed.Cir.1991)). The Court of Federal Claims therefore retains jurisdiction to consider claims not covered by the CSRA. *See Worthington v. United States,* 41 Fed.Cl. 181, 185 (1998) (holding jurisdiction retained "to hear claims based on a statutory right to receive money where plaintiffs had allegedly been deprived of that money by federal government action ... remained in place after the enactment of the CSRA except where the underlying personnel action is covered by the CSRA").

The CSRA encompasses personal actions including "(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less." 5 U.S.C. § 7512(1)–(5) (1994). Plaintiffs claim overtime pay for overtime work in light of the invalidation of the GPO's regulation authorizing compensa-

tory time for overtime work. The CSRA does not explicitly cover this claim. *See id.; see also* 5 U.S.C. §§ 2302, 7501–7514,7701 (1994 & Supp. II 1996) (outlining improper personnel actions and appeal process). Instead, this claim more closely resembles the two cases cited by plaintiffs, *Romero* and *Alaniz.* In *Romero* the Federal Circuit, determining that a withholding agreement was unlawful, permitted plaintiffs to recover under the Back Pay Act for funds withheld for income tax purposes. *See Romero,* 38 F.3d at 1207–12. Similarly, in *Alaniz* the Federal Circuit granted plaintiffs recovery pursuant to the Back Pay Act upon finding that cost-of-living reductions were invalid. *See Alaniz,* 728 F.2d at 1470. Thus, the court's jurisdiction in not eclipsed by the CSRA in this instance, and the court may consider plaintiffs' claim for overtime pay pursuant to the Back Pay Act. *Cf. Worthington,* 41 Fed.Cl. at 185–86 (finding plaintiff's claim covered by CSRA).

The Back Pay Act provides for the recovery of "an amount equal to all or any part of the pay" employees would have received, but for the unjustified or unwarranted personnel action, with interest. 5 U.S.C. § 5596(b)(1)(A)(i); *see* 5 U.S.C. § 5596(b)(2)(A). The crux of this issue therefore lies in the definition of unjustified or unwarranted personnel action. Section 5596(b)(4) defines personnel action to "include[ ] the omission or failure to take an action or confer a benefit." Case law indicates that an unjustified or unwarranted personnel action generally involves the hiring of an employee, a promotion or demotion, and the resignation or termination of an employee. *See Testan,* 424 U.S. at 405–06, 96 S.Ct. 948 (finding Back Pay Act inapplicable in claim for wrongful-classification and noting that "[t]he statute's language was intended to provide a monetary remedy for wrongful reductions in grade, removals, suspensions, and 'other unwarranted or unjustified actions affecting pay or allowances [that] could occur in the courts of reassignments and change from full-time to part-time work.'" (citation omitted)); *see also Bosco,* 976 F.2d at 713 (finding no adverse action resulting from reclassification because of retention of pay and grade). Nonetheless, this definition has

evolved to encompass procedural errors and, more recently, the failure to pay. *See Romero,* 38 F.3d at 1209–12 (finding withholding of pay sufficient to fall within context of personnel actions, such that plaintiffs entitled to recover pursuant to Back Pay Act); *Brown v. Secretary of the Army,* 918 F.2d 214, 219 (D.C.Cir.1990) (discussing CSRA reform of Back Pay Act and finding that withdrawal or reduction of pay is personnel action); *Alaniz,* 728 F.2d at 1470 (holding plaintiffs entitled to recover under the Back Pay Act for failure to pay pursuant to invalid modification of cost-of-living allowances); *Crimaldi v. United States,* 651 F.2d 151, 153–54 (2d Cir.1981) (noting that procedural error in context of dismissal may constitute unjustified or unwarranted personnel action).

Plaintiffs have demonstrated that they fall within the purview of the Back Pay Act as they have been "subjected to a reduction in their duly appointed emoluments." *Testan,* 424 U.S. at 407, 96 S.Ct. 948. Because the invalid modification with regard to overtime compensation had the practical effect of withholding pay from plaintiffs, they have been subjected to an unjustified or unwarranted personnel action as the term has developed. *See Alaniz* 728 F.2d at 1470; *see also* 44 U.S.C. § 305. Having established jurisdiction and entitlement to monetary award, plaintiffs may recover overtime pay at a rate of 150% of their normal wages under either the Back Pay Act or 5 U.S.C. § 5544. *See Spagnola v. Stockman,* 732 F.2d 908 (Fed.Cir.1984) (noting Back Pay Act is derivatively applicable); *Carpenter v. United States,* 28 Fed.Cl. 195, 199–200 (1993) (discussing derivative applicability of Back Pay to claims under pay statutes).

When plaintiffs may recover under either of two statutes, they are entitled to receive the greater of the relief provided. *See Alexander,* 32 F.3d at 1577. Section 5544 of 5 U.S.C. does not provide for a calculation of interest. In light of the interest provision explicitly included in the Back Pay Act, plaintiffs will receive greater recovery under this statute. *See Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1545 (Fed.Cir.1996) ("[N]o interest may be awarded on a claim against the United States absent an express contractual provision or act of Congress specifically providing for the payment of interest."). Therefore, plaintiffs are entitled to recovery, with interest, under the Back Pay Act.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Plaintiffs' motion for summary judgment as to liability on Count I of the First Amended Complaint is granted.

2. Plaintiffs are entitled to recovery of overtime pay at a rate of 150% of their straight wage at the time overtime work was performed.

3. Plaintiffs' recovery will be offset by the following formula. Plaintiffs are entitled to recovery of 150% of straight wage rates for all hours of unused compensatory time. Plaintiffs are entitled to recovery of 50% of straight wage rates for all hours of expended compensatory time. Plaintiffs will not be penalized for failing to use compensatory time, but will be able to recover regardless of use-or-lose policy enacted by the GPO's compensatory time instruction.

4. Plaintiffs are entitled to calculate interest pursuant to 5 U.S.C. § 5596(2)(B).

5. By December 30, 1998, the parties shall file a Joint Status Report proposing a schedule for terminating this litigation.