**POGGAS v. UNITED STATES.**

**No. 47652.**

United States Court of Claims.

Dec. 5, 1950.

Ray R. Murdock, Washington, D. C., for the plaintiff. Keith L. Seegmiller, Washington, D. C., Harold J. Butcher, Anchorage, Alaska and William J. Houston, were on the briefs.

Kendall M. Barnes, Washington, D. C., with whom was Asst. Atty. Gen. H. G. Morison, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff was, during the period here involved, a section foreman on the Alaska Railroad, an enterprise owned and operated by the United States Government through the Department of the Interior. He sues for overtime compensation for work in excess of forty hours per week. He bases his claim upon Section 23 of the Act of March 28, 1934, 48 Stat. 522, 5 U.S.C.A. § 673c, which reads as follows: "The weekly compensation, minus any general percentage reduction which may be prescribed by Act of Congress, for the several trades and occupations, which is set by wage boards or other wage-fixing authorities, shall be re-established and maintained at rates not lower than necessary to restore the full weekly earnings of such employees in accordance with the full-time weekly earnings under the respective wage schedules in effect on June 1, 1932: *Provided,* That the regular hours of labor shall not be more than forty per week; and all overtime shall be compensated for at the rate of not less than time and one half." Earlier cases involving the application of Section 23 to employees of the Panama Canal are Townsley v. United States, 101 Ct.Cl. 237, affirmed 323 U.S. 557, 65 S.Ct. 413, 89 L.Ed. 454; Hearne v. United States, 68 F.Supp. 786, 107 Ct. Cl. 335; Gray v. United States, 76 F.Supp. 102, 110 Ct.Cl. 661.

■ We must first determine whether the plaintiff was a "wage board employee" of the Government, that is, whether his employment was one of "the several trades and occupations (whose wages are) set by wage boards or other wage-fixing authorities" within the meaning of Section 23. So-called wage board employees of the Government are mechanical employees who perform the same kind of work for the Government that others of the same trade perform for private enterprise. Their wages are not set by statute in the Classification Acts, as are those of administrative, clerical, and armed forces employees, because the Government, being in direct competition with private employers for their services, must keep their wages more nearly on a level with those of private enterprise in the area where they work. Pertinent statutes, or executive orders authorized by statute, grant to a board, or to a single administrator such as the Governor of the Panama Canal, or to the head of a department, the power to fix the wages of mechanical employees in his enterprise. Such a single administrator answers the description of "other wage-fixing authorities" in Section 23. In the instant case the Secretary of the Interior was the wage-fixing authority. The Act of March 12, 1914, 38 Stat. 305, 48 U.S.C.A. § 301, lodged this power in the President, and he, by Executive Order No. 3861 of June 8, 1923, 5 U.S.C.A. § 485, placed it in the Secretary of the Interior.

■ The Government urges that the wages of the employees of the Alaska Railroad, including the plaintiff, were not fixed by the Secretary of the Interior, but were arrived at by collective bargaining between the unions of the employees and the General Manager of the railroad. There was discussion, which might be called bargaining, which may well have had an effect upon the wages fixed. But whatever may have induced the Secretary of the Interior to fix the wages which he did fix, the statute placed the power and the responsibility in him, and he was a "wage-fixing authority" within the meaning of Section 23.

Upon the enactment, in 1934, of Section 23, it was applied to the Alaska Railroad's employees by the General Manager, effective June 16, 1934. The Comptroller General was asked for his opinion as to its applicability, and on July 12, 1934, 14 C.G. 42, he ruled that it was not applicable, saying that railroad employment was a special sort of occupation not covered by the words "the several trades and occupations" used in Section 23. This conclusion was not elaborated by the Comptroller General, and there is little to be said in support of it. Railroad employees on a Government operated railroad do the same kinds of work as comparable employees on privately owned railroads, use the same tools and skills, and belong to the same "trades and occupations."

The Government urges that, even though the text of Section 23 would seem to apply to the plaintiff, its application would be so difficult that Congress must be deemed not to have intended it to apply. Wages of the employees of this railroad, as of privately operated railroads, who operate trains, the so-called operating employees, are paid by a "dual system" which bases wages upon either the hours worked or the miles travelled, which ever produces the higher wage. While such a system does make computation difficult, it by no means makes it impossible, and to compute time and one-half for the overtime over forty hours is simple multiplication, once the straight time computation is made for work done either within or beyond forty hours. The fact that if Section 23 was applicable to the Alaska Railroad, its application would produce difficulties of computation as to some of the employees, viz., the operating employees, does not, we think, show that Congress did not intend to cover employees of the railroad when it used language which did cover them.

Further questions are presented by later legislation.

Joint Resolution of December 22, 1942

The Joint Resolution of December 22, 1942, 56 Stat. 1068, reads, in pertinent part, as follows: " * * * That the joint resolution entitled 'joint resolution extending the period for which overtime rates of compensation may be paid under certain Acts', approved July 3, 1942, is amended by striking out 'November 30, 1942,' and inserting 'April 30, 1943: Provided, That the authorization contained herein to pay overtime compensation to certain groups of employees is hereby extended, effective December 1, 1942, to all civilian employees in or under the United States Government, including Government-owned or controlled organizations (except employees in the legislative and judicial branches), and to those employees of the District of Columbia municipal government who occupy positions subject to the Classification Act of 1923, as amended: Provided further, That such extension shall not apply to (a) those whose wages are fixed on a daily or hourly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose, (b) elected officials, (c) heads of departments, independent establishments and agencies, and (d) employees outside the continental limits of the United States, including Alaska, who are paid in accordance with local prevailing native wage rates for the area in which employed: Provided further, That overtime compensation authorized herein and under the Act approved February 10, 1942 (Public Law Numbered 450, Seventy-seventh Congress), and section 4 of the Act approved May 2, 1941 (Public Law Numbered 46, Seventy-seventh Congress), as amended, shall be payable only on that part of an employee's basic compensation not in excess of $2,900 per annum, and each such employee shall be paid only such overtime compensation or portion thereof as will not cause his aggregate compensation to exceed a rate of $5,000 per annum * * *."

The Comptroller General, by a decision of August 21, 1943, 23 C.G. 123, ruled that the Joint Resolution did not apply to employees of the Alaska Railroad because it expressly excluded daily and hourly wage-board employees, and "did not expressly include within its purview officers or employees whose wages on a monthly or yearly basis were fixed and adjusted by wage boards or similar administrative authority". The plaintiff says the Comptroller General's decision was correct, and the Government does not controvert that position. The plaintiff, threefore, continued to be entitled to the benefits of Section 23.

War Overtime Pay Act of 1943

Sections 1 and 2 of the War Overtime Pay Act of 1943, 57 Stat. 75, provided, in pertinent part, as follows:

" * * * That this Act shall apply to all civilian officers and employees (including officers and employees whose wages are fixed on a monthly or yearly basis and adjusted from time to time in accordance

with prevailing rates by wage boards or similar administrative authority serving the same purpose, except those in or under the Government Printing Office or the Tennessee Valley Authority) in or under the United States Government, including Government-owned or controlled corporations, and to those employees of the District of Columbia municipal government who occupy positions subject to the Classification Act of 1923, as amended, except that this Act shall not apply to (a) elected officials; (b) judges; (c) heads of departments, independent establishments, and agencies; (d) officers and employees in the field service of the Post Office Department; (e) employees whose wages are fixed on a daily or hourly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose; (f) employees outside the continental limits of the United States, including Alaska, who are paid in accordance with local prevailing native wage rates for the area in which employed; (g) officers and employees of the Inland Waterways Corporation; and (h) individuals to whom the provisions of section 1(a) of the Act entitled 'An Act to amend and clarify certain provisions of law relating to functions of the War Shipping Administration, and for other purposes', approved March 24, 1943 (Public Law Numbered 17, Seventy-eighth Congress), are applicable. As used in this section the term 'elected officials' shall not include officers elected by the Senate or House of Representatives who are not members of either body.

"Sec. 2. Officers and employees to whom this Act applies and who are not entitled to additional compensation under section 3 shall be paid overtime compensation computed on the same basis as the overtime compensation which was authorized to be paid under Public Law Numbered 821, Seventy-seventh Congress:[1] Provided, That such overtime compensation shall be paid only on the portion of an officer's or employee's basic rate of compensation not in excess of $2,900 per annum: Provided further, That such overtime compensation shall be paid on such portion of an officer's or employee's basic rate of compensation notwithstanding the fact that such payment will cause his aggregate compensation to exceed a rate of $5,000 per annum: And provided further, That in lieu of overtime compensation for work in excess of forty-eight hours in any administrative workweek, the heads of departments, establishments, and agencies may in their discretion grant per annum employees compensatory time off from duty. * * *"

The Comptroller General ruled on August 21, 1943, 23 C.G. 123, that this Act did apply to monthly and yearly employees of the Alaska Railroad, because it expressly included monthly and yearly wage-board employees. The plaintiff was a monthly employee, hence received the overtime compensation provided by this Act from May 1, 1943, until the Act expired on June 30, 1945. The plaintiff agrees that the Act was applicable to him, but urges that his overtime was not computed on the proper basis. In Townsley v. United States, supra, we held, and the Supreme Court approved our holding, that, in the absence of a statutory or other binding formula for the computation of overtime, overtime under Section 23 which provided for a 40-hour week, should be computed on the assumption that the basic pay was being earned in five days of the week or 260 days of the year, and the basic day's pay was 1/260th of the annual pay. This method of computing overtime is called by the parties in this case "true overtime." It is contrasted with a statutory formula, such as that in the Act of October 21, 1940, 54 Stat. 1205, not applicable to the employees of the Alaska Railroad, which said: "Provided, That in determining the overtime compensation of the foregoing per annum Government employees the pay for one day shall be considered to be one three-hundred-and-sixtieth of their respective per annum salaries."

In Gray v. United States, 76 F.Supp. 102, 110 Ct.Cl. 661, at pages 677, 679, 680,

---

1. This was the Joint Resolution of Dec. 22, 1942, quoted supra.

we held that, under the War Overtime Pay Act of 1943, Gray a monthly employee, was entitled to true overtime. That Act provided that employees to which it applied should be paid "overtime compensation computed on the same basis as the overtime compensation which was authorized to be paid under" the Joint Resolution of December 22, 1942. Our reason was that the Joint Resolution had merely continued whatever overtime Gray had been entitled to under the Act of October 21, 1940, and that under the Act he had been entitled to true overtime because he was not a per annum employee.

In this case the plaintiff was not covered by the Act of October 21, 1940, or by the Joint Resolution of December 22, 1942. The fact that the plaintiff and other employees of the Alaska Railroad had not been so covered would not render inapplicable the language quoted above providing that overtime should be computed on the basis of the Joint Resolution of December 22, 1942. But, as in the Gray case, we look in vain to the Joint Resolution, and to the earlier legislation therein referred to, for a definite formula, the one given in the Act of October 21, 1940, being applicable only to *per annum employees.*

In Barker v. United States, 117 Ct.Cl. —, No. 48694, decided July 10, 1950, we quoted Section 2(b) of Executive Order No. 9289, dated December 26, 1942, 7 F.R. 10897, C.F.R. Cum.Supp. Title 3, p. 1244, which said: "For the purpose of computing overtime compensation the pay for one hour shall be considered to be $\frac{1}{8}$ of the employee's pay for one day and the pay for one day shall be considered to be 1/360 of the employee's per-annum salary."

We concluded that Barker, though paid a monthly salary, was covered by the Executive Order, and that he was not entitled to true overtime. The Executive Order did not speak of per annum employees, and we thought that the mention of a per annum salary did not show that the President intended to make an important distinction between classes of employees whose situation was, in sub-

stance, the same. For the same reasons we conclude that the plaintiff was not entitled to true overtime while the War Overtime Pay Act of 1943 was in effect.

The Federal Employees Pay Act of 1945, 5 U.S.C.A. § 901 et seq.

We quote Sections 102(c) and 203 of the Federal Employees Pay Act of 1945, 59 Stat. 296.

"Sec. 102. * * * (c) This Act, except sections 203 and 607, shall not apply to employees whose basic compensation is fixed and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose. * * *

*   *   *   *   *   *

"Sec. 203. Employees whose basic rate of compensation is fixed on an annual or monthly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose shall be entitled to overtime pay in accordance with the provisions of section 23 of the Act of March 28, 1934 (U.S.C., 1940 edition, title 5, sec. 673c). The rate of compensation for each hour of overtime employment of any such employee shall be computed as follows:

"(a) If the basic rate of compensation of the employee is fixed on an annual basis, divide such basic rate of compensation by two thousand and eighty and multiply the quotient by one and one-half; and

"(b) If the basic rate of compensation of the employee is fixed on a monthly basis, multiply such basic rate of compensation by twelve to derive a basic annual rate of compensation, divide such basic annual rate of compensation by two thousand and eighty, and multiply the quotient by one and one-half."

This Act provides true overtime. It computes it on the basis of 2,080 hours per year, which is $173\frac{1}{3}$ hours per month, or approximately 22 eight-hour days. The Comptroller General ruled that it was applicable to the monthly wage-board employees of the Alaska Railroad, such as

the plaintiff, and he has been paid accordingly.

The Government urges that the evidence of the plaintiff's Sunday work is inadequate. However, the management of the railroad permitted and required the plaintiff to keep his own time, as well as that of the section hands who worked under him. A representative of the management testified that the plaintiff kept his time honestly and accurately. We think the evidence is sufficient.

The Government raises the defense of laches, pointing to the long period that elapsed between the refusal to pay overtime in 1934, and the filing of the original petition in this suit in March 1947, and the amended petition in December 1949. By the Act of November 1, 1949, Public Law 440, 81st Congress, 1st Session, 63 Stat. 1062, jurisdiction was conferred upon this Court—" * * * to determine the full amounts which are due and owing to present or former employees of The Alaska Railroad for overtime work performed, under the provisions of section 23 of the Act of March 28, 1934 (48 Stat. 522), from the effective date thereof, and render judgment upon such claims for the full amounts thus determined to be due and owing to any and all of said claimants."

We find it hard to believe that Congress, being fully aware of the date of origin of these claims, meant to waive the defense of the Statute of Limitations and at the same time retain the analogous defense of laches. We therefore interpret the Act of November 1, 1949, as a waiver by Congress of the defense of laches. We further doubt whether, regardless of the waiver by Congress in 1949, the defense of laches would be good, in the circumstances, against that part of the plaintiff's claim which accrued within six years. If an employee of the Government, even a workman in a remote area, as was the plaintiff, were wrongfully discharged, perhaps it would show a lack of diligence on his part, and a lack of consideration for the interests of the Government if he did not promptly bring suit. But here the plaintiff

was not discharged. He was only denied the benefit of a statute which would have added to his wages. He knew there had been a ruling by an important official in Washington that the statute did not include him. If he thought that settled the question, he thought only what department heads normally think when they have asked for and obtained a ruling from that official. We doubt whether, in such circumstances, the burden should be thrown upon the citizen to get the Government's law definitely interpreted for the Government's benefit.

Our conclusion is that the plaintiff is entitled to recover. Entry of judgment will be suspended to await the filing of a stipulation of the parties showing the amount to which the plaintiff is entitled, computed on the basis of our findings and opinion.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.