**Mildred LEWIS, et al.**

v.

**Danford L. SAWYER, Public Printer, U.S. Printing Office, Appellant.**

**No. 82–1911.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 12, 1982.

Decided Feb. 4, 1983.

Robert C. Seldon, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellant.

George B. Driesen, Washington, D.C., for appellees.

Before WRIGHT, TAMM and WALD, Circuit Judges.

JUDGMENT

PER CURIAM.

This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia and was briefed and argued by counsel. The issues presented have been accorded full consideration by the court; they occasion no need for an opinion. *See* D.C.Cir. Rule 13(c).

This court is in agreement with the result reached by the District Court in this case, generally for the reasons stated in its Memorandum Opinion filed July 2, 1982. *See* Joint Appendix at 15–24.

On consideration of the foregoing, it is ORDERED and ADJUDGED by this court that the judgment of the District Court appealed from in this cause is hereby affirmed.*

It is FURTHER ORDERED by this court, *sua sponte,* that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. *See* D.C.Cir. Rule 14, as amended November 30, 1981 and June 25, 1982.

Circuit Judge WALD files the attached concurring statement.

WALD, Circuit Judge, concurring:

I concur with the result the court reaches in this case, and agree in large part with

---

* After hearing oral argument, the court asked the parties to submit briefs addressing the question whether the Resolution adopted by the Joint Committee on Printing on May 11, 1982 violated separation of powers doctrine.

Having considered these briefs, the court is of the view that we should not attempt to decide that question on this record, particularly since none of the parties has raised it.

the district court's analysis of why 44 U.S.C. § 305[1] grants the Joint Committee on Printing ("JCP") the authority to halt the Public Printer's ("Printer") furlough plans for the Government Printing Office ("GPO"). *See Lewis v. Sawyer*, No. 82–1515, mem. op. at 2–5, 7–8 (D.D.C. July 2, 1982), *reprinted in* 1 Joint Appendix ("J.A.") at 15 [hereinafter cited as District Court Opinion]. I write separately because this case involves a number of significant issues, on one of which we requested supplementary briefs, and I believe it useful to provide the litigants and the public with some discussion of the reasoning behind my concurrence with the panel decision. Therefore, I discuss briefly: (1) whether the JCP's Resolution of May 11, 1982—which stated that the Printer should not implement his furlough plans until the JCP evaluated the GPO's personnel requirements— violated the separation of powers doctrine; (2) how to reconcile the authority the JCP exercises over "wages, salaries, and compensation" of GPO employees under 44 U.S.C. § 305 with the protections and processes applicable to GPO employees under other personnel statutes; and (3) the precise statutory basis and scope of the right that appellees seek to vindicate through declaratory judgment.

1. 44 U.S.C. § 305 states:
    (a) The Public Printer may employ journeymen, apprentices, laborers, and other persons necessary for the work of the Government Printing Office at rates of wages and salaries, including compensation for night and overtime work, he considers for the interest of the Government and just to the persons employed, except as otherwise provided by this section. He may not employ more persons than the necessities of the public work require nor more than four hundred apprentices at one time. The minimum pay of journeymen printers, pressmen, and bookbinders employed in the Government Printing Office shall be at the rate of 90 cents an hour for the time actually employed. Except as provided by the preceding part of this section the rate of wages, including compensation for night and overtime work, for more than ten employees of the same occupation shall be determined by a conference between the Public Printer and a committee selected by the trades affected, and the rates and compensation so agreed upon shall become effective upon approval by the Joint Committee on

## Separation of Powers

After oral argument, we asked counsel to submit briefs on whether "the factual situation in the present case constitutes an impermissible violation of the separation of powers doctrine." *Lewis v. Sawyer*, No. 82–1911 (D.C.Cir. Nov. 22, 1982) (order directing briefs). Upon reflection, I believe that the JCP resolution that checked the Printer's furlough plans did not run awry of the separation of powers doctrine. My conclusion is founded on five mutually supportive bases. First, as we noted recently in *Thompson v. Sawyer*, 678 F.2d 257, 264 (D.C.Cir.1982), "[t]he Government Printing Office is a unit of the legislative branch." Second, GPO's prime function is to support Congress by publishing for distribution legislative journals, bills, resolutions, laws, reports, and numerous other documents; this type of "informative" activity, "operat[ing] merely in aid of congressional authority to legislate," fits a "category [of] powers" that the Supreme Court considered within Congress' dominion. *See Buckley v. Valeo*, 424 U.S. 1, 137–43, 96 S.Ct. 612, 690–693, 46 L.Ed.2d 659 (1976) (per curiam).[2] Third, part of GPO's support function is related to a responsibility assigned to Congress by the Constitution: "Each house shall keep a

Printing. When the Public Printer and the committee representing a trade fail to agree as to wages, salaries, and compensation, either party may appeal to the Joint Committee on Printing, and the decision of the Joint Committee is final. The wages, salaries, and compensation so determined are not subject to change oftener than once a year.
    (b) The Public Printer may grant an employee paid on an annual basis compensatory time off from duty instead of overtime pay for overtime work.

2. One factor that distinguishes the JCP's resolution in this case from the recent "legislative veto" decisions of this court is the GPO's nature as a legislative unit performing a support function for Congress. *See American Fed'n of Gov't Employees v. Pierce*, 697 F.2d 303 (D.C. Cir.1982); *Consumers Union of the United States, Inc. v. Federal Trade Comm'n*, 691 F.2d 575 (D.C.Cir.1982); *Consumer Energy Council of America v. Federal Energy Regulatory Comm'n*, 673 F.2d 425 (D.C.Cir.1982).

Journal of its Proceedings, and from time to time publish the same . . . ." U.S.Const. art. I, § 5, cl. 3. Fourth, there is a long history of close congressional control of the public printing function, in part because the activity is vital to Congress' ability to operate.[3] In addition, it appears that the executive branch has not seriously challenged Congress' role vis-a-vis the GPO before this incident.[4] Fifth, while Congress has enmeshed the GPO to some degree with the executive by assigning it publishing duties for the executive branch,[5] and by including its employees within some personnel statutes,[6] Congress has also made it clear through numerous statutes that it retains control over a myriad of GPO operational decisions. See, e.g., 44 U.S.C. §§ 103 (power to remedy neglect, delay, duplication, waste), 502 (approval of contract work), 505 (regulation of sale of duplicate plates), 509 (fixing standards for paper), 512 (approval of paper contracts), 1914 (approval of measures taken by the Printer to implement the depository library program).

In sum, the GPO's purpose, performance, history, and ongoing relationship with Congress do not suggest that the JCP encroached on another branch and thereby offended the constitutional separation of powers when it ordered the Printer to halt his furlough plans. I do not think that the GPO, by nature a legislative support unit, vital to the flow of information within Congress and from Congress to the nation, can be metamorphosed into an executive agency by according GPO employees civil service protections applicable to and run by executive branch personnel.

*Reconciling § 305 with Coverage of GPO Employees Under the Civil Service Laws*

The government also argues that Congress, by including GPO employees within parts of the civil service statutory scheme, could not have "intended to have GPO employees treated any differently from other competitive service employees." Government's Opening Brief at 17–18. In particular, the government points out that GPO employees are among those covered by the provisions establishing furlough procedures. See 5 U.S.C. §§ 7511–7513; 5 C.F.R. § 752.-401(b)(1). The government reasons that since other competitive service employees cannot protest "adverse actions" such as furloughs to the JCP or Congress, neither should GPO employees. Instead, the government continues, 5 U.S.C. § 7513(d) establishes the appropriate appeal route: to the Merit Systems Protection Board under *id.* § 7701, and then judicial review under *id.* § 7703.

The answer to the government's argument is that the more specific instructions of 44 U.S.C. § 305 provide a special appeals process for some GPO employees when personnel matters involve "wages, salaries, and compensation." This reconciliation of § 305 with the civil service coverage of GPO employees does not render the latter statutory protections meaningless. They would remain available for: (1) personnel practices outside the § 305 appeals process; (2) cases that do not but could result in an appeal to the JCP; (3) any GPO employees not covered by § 305; and (4) situations in which the JCP fails to act favorably on appeals by employees.

The government has stated, however, that the invocation of the § 305 process deprived the district court of jurisdiction. Its reasoning runs as follows: GPO is among the agencies covered by 5 U.S.C. chapter 71 (Labor-Management Relations), see 5 U.S.C. § 7103(a)(3); the Federal Labor Relations Authority ("FLRA") has exclusive authority to "resolve[ ] issues relating to the duty [of the GPO and its employ-

---

**3.** *See* District Court Opinion at 3–4; 1 J.A. at 17–18.

**4.** *See* District Court Opinion at 4 & n. 6; 1 J.A. at 18.

**5.** *See* 44 U.S.C. § 501.

**6.** *See, e.g.,* 5 U.S.C. §§ 2301(a)(3), 2302(a)(2)(C), 7103(a)(3). Some of these provisions also apply to the Administrative Office of the United States Courts. *See, e.g.,* 5 U.S.C. §§ 2301(a)(2), 2302(a)(2)(C).

ees] to bargain in good faith," *id.* § 7105(a)(2)(E); the FLRA's authority includes reviewing an agency's determination that does not have to bargain over a certain matter, *id.* § 7117(c)(1); and in this case the Printer decided that he did not have to bargain over furlough plans under 44 U.S.C. § 305. Therefore, the government concludes, the FLRA had exclusive jurisdiction to deal with the question of the applicability of *id.* § 305.

I believe that the government's argument runs afoul of the definitions section of chapter 71. According to these definitions, "collective bargaining" involves efforts to reach agreement on "conditions of employment," but these conditions do *not* extend to "matters . . . specifically provided for by Federal statute." 5 U.S.C. § 7103(a)(12), (14)(C). Since 44 U.S.C. § 305 sets up a specific process for negotiating and appealing "wages, salaries, and compensation" of GPO employees, and because I agree with the district court that this includes furlough decisions, chapter 71 does not apply to bargaining over furloughs under *id.* § 305. Furthermore, 5 U.S.C. § 7116(a)(5) limits "unfair labor practices" to refusals to negotiate in good faith "as required by this chapter." If there is no requirement to negotiate over compensation (and furloughs), there can be no agency violation for the FLRA to review. In sum, the FLRA does not provide the forum for enforcing a right to have decisions on compensation and furloughs appealed to and approved by the JCP under 44 U.S.C. § 305.

*The Declaratory Judgment of the GPO Employees' Rights*

The district court decided that "a declaratory judgment is appropriate [in this case] to resolve the conflicting interests of the Printer and the GPO workers." District Court Opinion at 10; 1 J.A. at 24. I agree. However, the district court did not specify the exact legal interest of the *GPO employees* that the Printer had infringed. In discussing the *JCP's* powers, the district court referred to "Title 44" and to 44 U.S.C. §§ 103, 305. District Court Opinion at 8; 1

J.A. at 22. But to approve a declaratory judgment for the GPO employees in this case, we have to infer a private right for them from these statutes.

It is clear to me that 44 U.S.C. § 305 creates a federal right for GPO employees. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Borrell v. United States International Communications Agency,* 682 F.2d 981 (D.C.Cir.1982). But I do not find in 44 U.S.C. § 103 a similar legislative intent to create a private right for the GPO employees. Therefore, I believe the district court should have specified which GPO employees have the right under *id.* § 305 to appeal the Printer's furlough decisions.

Section 305 establishes the negotiation procedure for "more than ten employees of the same occupation," and sets up a bargaining "conference between the Public Printer and a committee selected by the trades." It appears from the legislative history that Congress intended § 305 to cover employees of all occupations. *See* H.R.Rep. No. 412, 68th Cong., 1st Sess. 2–3 (1924), *reprinted in* 2 J.A. at 365–67; H.R. Rep. No. 1, 68th Cong., 1st Sess. 2–5 (1923); 65 Cong.Rec. 10,555–56 (remarks of Rep. Kiess, Chairman of the Committee on Printing), *reprinted in* 2 J.A. at 367–68. However, Congress created an exception for "groups of 10 or fewer employees of the same occupation," "[s]o as not to hamper the Public Printer in emergencies and also not to burden the committee with minor details." 65 Cong.Rec. 10,556 (remarks of Rep. Kiess); 2 J.A. at 368. Chairman Kiess added that the exception "is to provide for the employment from time to time of small numbers of mechanics and laborers, such as carpenters, plasterers, bricklayers, pipe fitters, electricians, and so forth." 65 Cong. Rec. 10,556; 2 J.A. at 368–69. I cannot tell

from the record whether all GPO employees qualify for § 305 coverage and have sought it. Therefore, I do not know if all GPO employees have secured the protection of the JCP's countermand of the Printer's furlough plans.

*Conclusion*

I do not intend these comments to detract from my agreement with the panel and the district court on the central point that "the statutory scheme under which [the Printer] operates subjects his decision [on furloughs] to the will of the Joint Committee on Printing." District Court Opinion at 10; 1 J.A. at 24. Instead, I write to explain my reasons for concluding that the government's separation of powers arguments do not undercut the JCP's authority in this case; that 44 U.S.C. § 305 can be reconciled with the civil service laws that the government argues are controlling; and to point out a slight disagreement with the district court's treatment of the rights of GPO employees on declaratory judgment.