**Maurice M. ABRAMSON, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 96–338C.

United States Court of Federal Claims.

Jan. 22, 1998.

---

William W. Thompson, II, Washington, DC, for plaintiffs. Michael S. Wolly, Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C., of counsel.

Hillary A. Stern, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Drew Spalding, Deputy General Counsel, Government Printing Office, of counsel.

## OPINION

MILLER, Judge.

This case is before the court after argument on defendant's motion to dismiss Count IV of plaintiffs' first amended complaint for failure to state a claim upon which relief may be granted. Plaintiffs have cross-moved for summary judgment on Count IV. Plaintiffs claim that the overtime pay requirements in 5 U.S.C. § 5544(a) (1994), apply to certain supervisory employees of the United States Government Printing Office to the exclusion of the Keiss Act, 44 U.S.C. § 305(b) (1994), which allows the Public Printer to grant compensatory leave instead of overtime pay.

## FACTS

The following facts are undisputed. Plaintiffs are employees holding various supervisory positions—including group chiefs, assistant forepersons, forepersons, and supervisory printing specialists—employed by the United States Government Printing Office (the "GPO"), Washington, DC. Prior to June 1, 1995, supervisory employees of the GPO received compensation for approved work beyond their normal 8 hours per day or 40 hours per week at a rate of 150% their normal pay rate.

On June 5, 1995, the Public Printer, Michael F. DiMario, issued a notice entitled "Overtime Payments for Supervisors." This communication was to take effect on June 11, 1995, and to remain in force until July 1, 1996. Plaintiffs fell under the ambit of the notice, which covered all GPO supervisors, and provided that in lieu of overtime pay supervisors would receive compensatory time off. Specifically, for each hour of overtime worked, an employee would receive one hour of compensatory time, could not accrue in

excess of 80 hours of compensatory time, and would forfeit any compensatory time not utilized within six pay periods from the current date.[1] The provisions of this notice were extended indefinitely on June 6, 1996.

Count IV of plaintiffs' amended complaint alleges that, by substituting compensatory time for overtime pay, the GPO violated 5 U.S.C. § 5544(a), which sets forth the standards governing overtime pay. As a result of this alleged violation, plaintiffs claim that they are entitled to back pay at an amount yet to be established. Defendant argues that section 5544(a) does not apply to plaintiffs.[2]

## DISCUSSION

The question before the court devolves to whether plaintiffs fall within the ambit of 5 U.S.C. § 5544(a). This provision states, in pertinent part:

> An employee whose pay is fixed and adjusted from time to time in accordance with prevailing rates under section 5343 or 5349 of this title, or by a wage board or similar administrative authority serving the same purpose, is entitled to overtime pay for overtime work in excess of 8 hours a day or 40 hours a week. However, an employee subject to this subsection who regularly is required to remain at or within the confines of his post of duty in excess of 8 hours a day in a standby or on-call status is entitled to overtime pay only for hours of duty, exclusive of eating and sleeping time, in excess of 40 a week. . . .

Defendant maintains that plaintiffs are excluded from section 5544(a) by the statute's definition section, 5 U.S.C. § 5541, which specifies the agencies and employees covered by section 5544(a). Section 5541 provides in pertinent part:

(1) "agency" means—

1. The parties do not dispute that since June 11, 1995, plaintiffs have not received payment for work performed in excess of their basic tour of duty at overtime rates of 150%; instead, they have received one hour of compensatory time for each hour of overtime worked.

2. At oral argument defense counsel represented that it did not object to treating its motion to dismiss as one for summary judgment. Defendant had submitted a declaration from Edward A. Blatt, GPO Director of Personnel. Although

defense counsel stated that the declaration was supplied in response to plaintiffs' motion for summary judgment and not in support of defendant's motion to dismiss, defense counsel was not willing to have the court ignore this declaration. *See* Transcript of Proceedings, *Abramson v. United States,* No. 96–338C, at 20–21 (Fed.Cl. Dec. 1, 1997). Pursuant to RCFC 12(b)(4), the court treats defendant's motion as a cross-motion for summary judgment as to Count IV of the amended complaint.

(A) an Executive agency;

(B) a military department;

(C) an agency in the judicial branch;

(D) the Library of Congress;

(E) the Botanic Garden;

(F) the Office of the Architect of the Capitol; and

(G) the government of the District of Columbia;

(2) "employee" means—

(A) an employee in or under an Executive agency;

(B) an individual employed by the government of the District of Columbia; and

(C) an employee in or under the judicial branch, the Library of Congress, the Botanic Garden, and the Office of the Architect of the Capitol, who occupies a position subject to chapter 51 and subchapter III of chapter 53 of this title;

but does not include—

. . . .

(xi) an employee whose pay is fixed and adjusted from time to time in accordance with prevailing rates under subchapter IV of chapter 53 of this title, or by a wage board or similar administrative authority serving the same, except as provided by section 5544 of this title.

Defendant has proffered a cogent argument that employees of the GPO are not covered by section 5544(a). According to defendant, even a cursory reading of sections 5541(2)(A)–(C) indicates that GPO employees are not covered by section 5544(a) because they are not employees of an executive agency,[3] the District of Columbia, the judicial branch, the Library of Congress, the Botanic Garden, or the Office of the Architect of the Capitol. Defendant relies on *Colautti v. Franklin*, 439 U.S. 379, 392–93 n. 10, 99 S.Ct. 675, 684 n. 10, 58 L.Ed.2d 596 (1979), for the proposition that, by defining the meaning of a term, a statute excludes those possible meanings not mentioned.

Defendant also addresses the second part of section 5541(2), which it characterizes as an exception to the first part. This component of section 5541 excludes certain employees who would otherwise be included pursuant to sections 5541(2)(A)–(C). Of particular importance to the case at bar is section 5541(2)(xi), which excludes those employees "whose pay is fixed and adjusted from time to time in accordance with prevailing rates . . . or by a wage board or similar administrative authority serving the same purpose, except as provided by section 5544 of this title." Defendant maintains that the final clause of section 5541(2)(xi) serves as an exception to the exclusion.

Defendant takes the position that this exception to the exclusion has only limited power to bring excluded individuals back within the ambit of section 5541. For example, if an individual were employed by the Architect of the Capitol, that individual would fall within the definition of an employee. However, if that same individual's wages were determined in accordance with prevailing rates, he or she would be excluded unless the exception to the exclusion, section 5541(2)(xi), took effect. In the case at bar, defendant suggests that, as employees of the GPO were never within the definition of an employee, the exception to the exclusion cannot serve to broaden the original class and bring them within the scope of section 5544(a).

The basis of defendant's position is that the exception to the exclusion does no more than direct the court to determine if section 5544(a) contemplates covering employees such as plaintiffs. In this manner defendant contends that the exception to the exclusion provides no affirmative basis for the court to rule that plaintiffs are covered by section 5544 without conducting an independent inquiry into the breadth of section 5544. The relevant portion of section 5544(a) provides that "[a]n employee whose pay is fixed and adjusted from time to time in accordance with prevailing rates under section 5343 or 5349 of this title, or by a wage board or

---

**3.** The GPO is deemed to be a legislative, not an executive agency. Plaintiffs concur in this characterization. *See McKenzie v. Sawyer*, 684 F.2d 62, 68 (D.C.Cir.1982); *Thompson v. Sawyer*, 678 F.2d 257, 264 (D.C.Cir.1982); *see also* Plfs' Br. filed Apr. 14, 1997, at 1 (stating that GPO is a legislative agency).

similar administrative authority serving the same purpose, is entitled to overtime pay...."

Defendant has demonstrated convincingly that plaintiffs are not employees whose wages are determined pursuant to sections 5343 or 5349, and plaintiffs have not raised a credible argument to the contrary.[4] Next, defendant argues that plaintiffs have conceded that they are paid pursuant to 44 U.S.C. § 305 and that the pay provisions of section 305 are inconsistent with those of a wage board or similar administrative authority. Instead, defendant shows that the wages of plaintiffs are set administratively by the Public Printer.

Defendant's interpretation of the relevant statutes is a reasonable one. Were the court considering this case in a vacuum, it would give due weight to defendant's interpretation. Notwithstanding the persuasiveness of that interpretation, however, the court cannot ignore the fact that for several decades the GPO has construed section 5544(a) in such a manner as to bring its employees within the purview of that statute.

In construing the application of section 5544, prior to 1995, the GPO relied on judicial and administrative decisions, canons of statutory interpretation, and pertinent legislative history. The courts notes, as an initial point, that the GPO's prior long-standing interpretation developed in a manner consistent with the evolution of the current Title V. In other words, the GPO has been receptive to developments in the law as they have occurred and has responded accordingly.

The point of departure for an analysis of the GPO's prior interpretation begins with section 23 of the Independent Offices Appropriation Act of 1934, 48 Stat. 522 (1934), which was recodified as the former 5 U.S.C. § 673(c). This provision established that employees whose salaries were set by "wage boards or similar administrative authorities"

are entitled to overtime pay. The War Overtime Pay Act of 1943, 57 Stat. 75 (1943), provides significant support for the notion that the GPO was covered by section 673(c). This statute states that it

> shall apply to all civilian officers and employees (including officers and employees whose wages are fixed on a monthly or yearly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose, except those in or under the Government Printing Office or the Tennessee Valley Authority)....

The implication of the War Overtime Pay Act is that the GPO's employees are employed by a wage board or similar administrative authority, but are exempted from this particular piece of legislation.

■ The United States Court of Claims, predecessor to the Federal Circuit, has taken a rather liberal view of what constitutes a wage board or similar administrative authority:

> So-called wage board employees of the Government are mechanical employees who perform the same kind of work for the Government that others of the same trade perform for private enterprise.... Pertinent statute, or executive orders authorized by statute, grant to a board, or to a single administrator ... or to the head of a department, the power to fix the wages of mechanical employees in his enterprise.... Such a single administrator answers the description of "other wage fixing authorities" in Section 23 [a precursor to § 5544(a)].

*Poggas v. United States*, 118 Ct.Cl. 385, 403, 93 F.Supp. 1009, 1010 (1950). Having established these parameters, the *Poggas* court concluded that the Secretary of the Interior was a wage-fixing authority within the mean-

---

**4.** Defendant has noted that plaintiffs do not have their wages set in accordance with section 5343 because the applicable definition section 5342 excludes the GPO from coverage. Section 5342(b)(2) provides that the entire subchapter is inapplicable to employees described in 5 U.S.C. § 5102(c), which refers expressly to employees of the GPO.

Regarding section 5349, defendant maintains that this provision is covered by the same definition section 5342 applicable to section 5343. Moreover, section 5349(b) states that it does not affect or modify 44 U.S.C. § 305. Because plaintiffs are compensated pursuant to 44 U.S.C. § 305, 5 U.S.C.A. § 5349 does not serve to bring plaintiffs within the scope of section 5544.

ing of section 23. Similarly, the Public Printer can also be deemed to be a wage-fixing authority within the meaning of section 5544(a).[5]

Both the Supreme Court and the Court of Claims have examined the scope of the predecessors to section 5544. In *United States v. Townsley*, 323 U.S. 557, 65 S.Ct. 413, 89 L.Ed. 454 (1945), the Supreme Court held that 5 U.S.C. § 673(c) applied to employees paid on a monthly basis. *Townsley* also suggests that the statute applied to supervisors, as plaintiff was employed by the Panama Canal as an "operator, chief operator, and master of a dredge...." 323 U.S. at 558, 65 S.Ct. at 414. In *Hearne v. United States*, 107 Ct.Cl. 335, 68 F.Supp. 786 (1946), the Court of Claims extended *Townsley* and held that employees paid on an annual basis were entitled to overtime compensation.

Following the Supreme Court's guidance in *Townsley*, Congress enacted section 203 of the Pay Act of 1945, codified as former 5 U.S.C. § 913, which provided:

> Employees whose basic rate of compensation is fixed on an annual or monthly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose shall be entitled to overtime pay in accordance with the provisions of § 673c of this title.

Section 913, along with section 673(c), is a predecessor statute to the current section 5544. Thus, Congress extended the protections of section 673(c) to employees paid on an annual and monthly basis. When Congress revised Title V in 1966, it combined sections 673 and 913 to form the current section 5544 and provided expressly that the revised Title V did not effect any substantive changes.

Having established that it would be reasonable for the GPO to construe section 5544 as applicable to its employees,[6] plaintiffs have provided the court with a variety of evidence indicating that the GPO has adopted such a construction. For example, in a July 10, 1978 position paper submitted to the Committee, the GPO stated:

> GPO employees presently are paid at the rate of one and one-half times their regular rate of pay for all hours of work performed outside their regularly scheduled work week ... provided they have first met the basic overtime provisions of 5 U.S.C. 5544.
>
> . . . .
>
> The overtime provisions of 5 U.S.C. 5544 and earlier statutory provisions from which such Section was derived have been repeatedly held applicable to GPO employees by the Comptroller General and the Supreme Court....

5. The GPO has long considered the authority vested in the Public Printer and the Joint Committee on Printing (the "Committee") collectively to constitute an administrative authority similar to a wage board. *See* Letter dated Nov. 18, 1980, from Lois Schutte, GPO Director of Personnel. The court cannot accept defendant's contention that because the Public Printer and the Committee together are deemed to be a wage board or similar administrative authority, only employees whose wages are approved by the Committee are covered by section 5544. The mere fact that the Public Printer need not obtain the Committee's approval when setting plaintiffs' wages does not remove plaintiffs from the protections of section 5544.

The wages of all plaintiffs, other than supervisory printing specialists, are related directly to those of the rank-and-file employees that they supervise. All other plaintiffs have their salaries set at specified levels above the rank and file. By approving the wages for the rank and file, the Committee by definition also is setting the wages for the majority of plaintiffs. As for the supervisory printing specialists, the court would espouse an unduly narrow view of the GPO salary-setting system were it to find that they are not covered by section 5544. The entire GPO salary structure has been established in conjunction with the Committee. Pay scales for white-collar employees, such as the supervisory printing specialists, allow Congress to retain oversight, but obviate the need for its periodic involvement.

6. It would also be reasonable for the GPO to construe the exception to the exclusion found in section 5541(2)(xi) as applicable to its employees. The current section 5541 is derived from the former 5 U.S.C. §§ 901, 902. Section 902 stated that section 203 of the Pay Act of 1945 applied to "employees whose basic compensation is fixed and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose." Because section 203 was codified as the former 5 U.S.C. § 913, one of the predecessor statutes to the current section 5544, it is reasonable for the GPO to have considered itself covered by the provisions of section 5544.

Thus, since the Act of 1934 applied to GPO, its subsequent reenactment and placement within Title 5 would have no effect on the applicability of 5 U.S.C. 5544 to GPO and its employees.

Plaintiffs have further evidence of the GPO's position with respect to the applicability of section 5544. A brief[7] submitted on July 20, 1978, during the same wage negotiation represented:

[S]ince enactment of the latter Act [the Independent Offices Appropriation Act of 1935], the Public Printer has been limited by the statutory limitations presently expressed in 5 U.S.C. 5544. This is so despite the fact that GPO and its employees were excluded under the definition of "agency" in 5 U.S.C. 5541(1), since they were included for purposes of 5 U.S.C. 5544 by 5 U.S.C. 5541(2)(xi). . . .

The effect of § 5541(2) is to first exclude, and then in § 5541(2)(xi) put back into the statute's coverage for purposes of the overtime limitation provisions of 5 U.S.C. 5544, certain employees, including the Government Printing Office employees paid pursuant to 44 U.S.C. 305. This was done, as pointed out in our earlier brief, because 5 U.S.C. 5544 is a mere restatement for "clarity and conciseness" of earlier provisions of law, namely the Independent Offices Appropriations Act of 1935 . . . the provisions of which statute were amended by section 201 of the Work Hours Act of 1962, former Title 5, section 673c (2d proviso) . . . which was by Pub.L. 89–554 of September 6, 1966 . . . combined with former Title 5, section 913.

Plaintiffs offer other examples of the GPO's prior long-standing interpretation. In a December 4, 1979 letter, Charles A. Roberts, GPO Director, Labor–Management Relations Service, informed the GPO's Director of Personnel that the only section of subchapter 5's premium pay provisions to which

the GPO was subject was section 5544. In a letter dated November 18, 1980, Ms. Schutte, GPO Director of Personnel, explained to the Office of Personnel Management that

[t]he effect of Section 5544 is to subject GPO employees whose wages are negotiated or otherwise fixed pursuant to 44 U.S.C. 305 to the eight and forty-hour overtime and Sunday 25% premium provisions of 5 U.S.C. 5544 and thus act as a limitation on the Public Printer and the Joint Committee on Printing's administrative wage setting authority.

In a research report dated November 8, 1992, Robert M. Storck, GPO Personnel Officer, informed Willard Sturdivant, Director of Personnel, that section 5544 applies to GPO employees.

■ These documents reinforce the GPO's pre–1995 interpretation[8] as both reasonable and carefully considered. The Federal Circuit "accords considerable weight to the prior long-standing interpretation, if reasonable, of the agency charged with administering a regulatory scheme." *Craft Mach. Works, Inc. v. United States,* 926 F.2d 1110, 1114 (Fed.Cir. 1991). Moreover, an agency's prior practice is relevant to the degree of deference granted a revised interpretation of an applicable statute. *See Texas Crushed Stone Co. v. United States,* 35 F.3d 1535, 1541 n. 7 (Fed. Cir.1994). "An agency's interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *Id.* (quoting *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987)).

Applying a similar line of reasoning in a case similar to the one currently before the court, the Eleventh Circuit rejected an agency's new interpretation of a statute:

The agency's current interpretation was not contemporaneous with the legislation.

---

7. This brief, like the position paper discussed above, was submitted during collective bargaining for rank-and-file GPO employees. Although neither addresses directly the wages of supervisory employees, each discusses the GPO in general terms and does address GPO employees paid pursuant to 44 U.S.C. § 305. Supervisory employees are paid pursuant to section 305.

8. The court acknowledges that the GPO began to question its interpretation of section 5544 as early as 1991. *See* Internal GPO Memorandum of Oct. 4, 1991 (expressing General Counsel's opinion as to nonapplicability of section 5544). Nonetheless, the GPO did not adopt its new interpretation until 1995.

In fact it marks a significant departure from the agency's original practice. We agree with the Secretary that he is not absolutely bound by his previous interpretation, but disagree with him concerning the amount of deference due the new formulation. We are more reluctant to defer to an agency's more recent interpretation as authoritative when it conflicts with earlier pronouncements of the agency.

*Frank Diehl Farms v. Secretary of Labor,* 696 F.2d 1325, 1330 (11th Cir.1983) (citation and footnote omitted). Following the principles articulated by the Supreme Court, the Federal Circuit, and the Eleventh Circuit, this court cannot give great deference to the GPO's current interpretation of sections 5541 and 5544. Although the GPO may have a commendable motive behind its efforts to award compensatory time off instead of overtime pay, the court cannot disregard the GPO's decades-long interpretation of section 5544 as applying to positions held by plaintiffs.

■ The GPO's prior interpretation developed over the course of 60 years. As new legislation was enacted addressing the length of the Government workweek, the GPO analyzed and inquired into its scope. For example, plaintiffs cite numerous Comptroller General decisions issued in response to questions posed by the GPO. *See, e.g.,* 13 Comp. Gen. 265 (1934) (noting that the section 23 of Independent Offices Act applies to GPO supervisors, but not those paid on annual basis); 42 Comp. Gen. 309 (1962) (finding that GPO supervisors paid on annual basis are entitled to overtime pay); GAO Dec. No. B–176365 (1972) (stating that section 5544 applies to GPO); GAO Dec. No. B–191619 (1978) (same). It is evident that the GPO developed its position with respect to overtime after considerable and repeated deliberation.

Moreover, as plaintiffs argue, the pre–1995 interpretation fully comports with the applicable maxims of statutory construction. Plaintiffs characterize the canon applied by the GPO in its 1978 brief to the Committee, *see supra* p. 9, as the "last antecedent" rule,

which provides that "'[i]n construing statutes, qualifying phrases are generally applied to the immediately preceding phrase and not to phrases more remote.'" *Ruben by Ruben v. Secretary of DHHS,* 22 Cl.Ct. 264, 266 (1991) (quoting *First Charter Fin. Corp. v. United States,* 669 F.2d 1342, 1350 (9th Cir. 1982)). Application of this principle results in the exception to the exclusion found in section 5541(2)(xi) applying only to the immediately preceding text within that proviso and having no bearing on the more distant inclusive definitions of section 5541(2)(A)–(C).

This rule of statutory construction provides a result consistent with both the legislative history and prior judicial and administrative decisions antedating the current sections 5541 and 5544. The Federal Circuit's position with respect to statutory construction is clear: "The goal is to identify 'that permissible meaning which fits most logically and comfortably into the body of both previously and subsequently enacted law ... because it is our role to make sense rather than nonsense out of the corpus juris.'" *Smith v. Brown,* 35 F.3d 1516, 1523 (Fed.Cir.1994) (quoting *West Va. Univ. Hosps. v. Casey,* 499 U.S. 83, 100–01, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991)). Thus, the court concludes "as a matter of statutory construction, the agency was right the first time...." *Frank Diehl Farms,* 696 F.2d at 1329.

■ This conclusion does not end the inquiry. Defendant contends that, notwithstanding the construction given to the exception to the exclusion found in section 5541 and to section 5544 itself, the court must determine the ramifications of 44 U.S.C. § 305(b).[9] This statute reads in its entirety: "The Public Printer may grant an employee paid on an annual basis compensatory time off from duty instead of overtime pay for overtime work." Of the plaintiffs in the case at bar, assistant forepersons, forepersons, and supervisory printing specialists are all paid on an annual basis. The group chiefs, who constitute the largest class of plaintiffs, are not. Thus, it appears initially that it is

---

9. The GPO had until 1995 considered section 5544 to be a curb on the authority granted to the

Public Printer by 44 U.S.C. § 305 to set the salaries of GPO employees.

within the purview of the Public Printer to opt to grant only a minority of plaintiffs compensatory time off instead of overtime pay.[10]

Although section 305(b) was enacted in 1970, the GPO chose not to exercise the discretion conferred on it; none of the job classifications held by plaintiffs ever received compensatory time off in lieu of overtime pay. Whether the Public Printer may now choose to exercise his discretion after having not done so for 25 years is the question that must be addressed.

Plaintiffs ask the court to look beyond the apparent plain meaning of the statute and examine the legislative history surrounding the enactment of section 305(b). In order to manufacture the requisite ambiguity, they take the position that the words "on an annual basis" are ambiguous. This argument is off-mark as the phrase "on an annual basis" has an unambiguous plain meaning.

Were it not for a recent Federal Circuit case, the court would be reluctant to consider the legislative history of section 305(b). However, in *American Broadcasting Cos. v. United States*, 129 F.3d 1243, 1245 (Fed.Cir. 1997), the Federal Circuit stated that in matters of statutory interpretation the court is to defer to an agency's interpretation "if it does not contravene clear, discernible legislative intent." In adopting this rule of statutory interpretation, the Federal Circuit relied, in part, on *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)), where the Court noted that "[i]f the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" This recent guidance from the Federal Circuit is in accord with its earlier directives stating that a court may review a statute's legislative history if

> a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, or would thwart the obvious purposes of the statute, or would lead to a result at variance with the policy of the legislation as a whole, then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress.

*Reid v. Department of Commerce*, 793 F.2d 277, 281–82 (Fed.Cir.1986) (citations omitted).

Although the phrase "on an annual basis" is unambiguous, clear legislative history suggests that Congress did not intend to provide the Public Printer with the discretion to grant all employees paid on annual basis compensatory time off in lieu of overtime pay. The GPO sought the enactment of section 305(b) in response to the Comptroller General's concern, expressed in a 1966 decision, that the Public Printer's practice of granting compensatory time off to certain employees was beyond the authority of that office. *See* GAO Dec. No. B–158682 (1966). In this decision the GAO limited its reservations "to those employees of your office [the GPO] whose compensation is fixed on the basis of the compensation provided for positions with comparable duties by the Classification Act of 1949." *Id.*[11] The Comptroller

---

**10.** Plaintiffs' urge the court to rule that section 305(b) cannot, and should not, be reconciled with section 5544(a), arguing that they are entitled to overtime pay regardless of whether they fall within the ambit of section 305(b). Rejecting this approach, the District of Columbia Circuit has noted that

> the more specific instructions of 44 U.S.C. § 305 provide a special appeals process for some GPO employees when personnel matters involve 'wages, salaries, and compensation.' This reconciliation of § 305 with the civil service coverage of GPO employees does not render the latter statutory protections meaning-

less. They would remain available for ... any GPO employees not covered by § 305.

*Lewis v. Sawyer*, 698 F.2d 1261, 1263 (D.C.Cir. 1983) *(per curiam )* (Wald, J., concurring). The court considers this analysis persuasive.

**11.** The Classification Act established pay scales for government employees now known as the general schedule. Although the GPO is exempt from the Classification Act, *see* 5 U.S.C. § 5102(c)(7), (9), it has adopted certain aspects of this legislation administratively and has established its own version of the general schedule designated, prior to 1979, as the "General

General stated that the General Accounting Office would refrain from further investigation into the Public Printer's practices if the GPO would agree to seek clarifying legislation. Section 305(b) was enacted four years later and served to ratify the Public Printer's practice of granting certain employees compensatory time off.

In the report accompanying the enactment of section 305(b), Congress stated:

> The purpose of this bill [implementation of 44 U.S.C. § 305(b)] is to grant legislative sanctions for the longstanding policy of the Public Printer which permits, as a substitute for paid overtime, the granting of an equivalent amount of time off from duty to annual salaried employees who are required to work overtime. The proposal ... is submitted in accordance with a recommendation by the Assistant Comptroller General of the United States and with the concurrence of the Joint Committee on Printing.

S. Rep No. 91–1027, at 1 (1970).

Plaintiffs whose title is group chief are beyond the scope of section 305(b) because they are deemed to hold "hourly premium" positions. *See* Declaration of Edward A. Blatt, GPO Director of Personnel, Oct. 24, 1997, ¶ 7. Mr. Blatt posits that no discernible reason exists why group chiefs are designated "hourly premium" positions and forepersons and assistant forepersons are deemed to be "annual premium" positions. He maintains that each of the positions is supervisory and that each is subject to the same agency practices and procedures. Mr. Blatt also states that the discrepancy in designation has existed since 1964. The court cannot accept Mr. Blatt's contentions that the three positions should receive the same treatment. In over 30 years, the GPO has not changed the designation of group chiefs from "hourly" to "annual," although it could have done so. Because GPO Instruction 640.6A (Mar. 30, 1979), referenced in Mr. Blatt's declaration, differentiates between group chiefs and forepersons and assistant forepersons, the agency may not argue that they should receive identical treatment for the purposes of prevailing in litigation.

Plaintiffs whose titles are foreperson and assistant foreperson are deemed by the instruction to be "annual premium" positions and therefore may fall within the ambit of section 305(b). Assistant forepersons and forepersons, like group chiefs, are known as "craft uprate" employees. As discussed previously, their salaries are set after the GPO has negotiated salary rates with the journeypersons supervised by these individuals. Once its negotiations with the rank and file are completed, the GPO applies certain formulas to set the wages of assistant forepersons, forepersons, and group chiefs at set percentages above those of the journeypersons whom they supervise. *See* Blatt Decl. ¶ 6. Forepersons receive the highest percentage above the journeypersons, followed by assistant forepersons, and then group chiefs. Thus, the individuals holding these positions are not paid pursuant to a wage scale similar to that referenced in the Classification Act and are beyond the scope of section 305(*o*).

■ The next group of plaintiffs are those who hold the title supervisory printing specialist. Instruction 640.6A does not list the title supervisory printing specialist under either hourly premium positions or annual premium positions. Furthermore, Mr. Blatt explains that supervisory printing specialists are paid "in essentially the same manner as the executive branch pays its General Schedule (GS) employees." Blatt Decl. ¶ 8. It therefore appears that supervisory printing specialists were the type of employee about whom the Comptroller General had concerns in 1966 that Congress subsequently alleviated when it enacted section 305(b).

Plaintiffs contend that supervisory printing specialists are beyond the scope of section 305(b). First, plaintiffs maintain that the position of supervisory printing specialist did not exist at the time section 305(b) was enacted. This argument is not persuasive. Plaintiffs also take the position that supervisory printing specialists never were awarded time off in lieu of overtime pay. Plaintiffs have directed the court's attention to GPO Instruction 645.5B (Sept. 24, 1976), which

Grade" system and subsequently renamed the

"Printing Office Grade" system.

states that only those white-collar employees ranked at "GG–14 and above" will receive compensatory time off. Those at levels of GG–13 and below will receive overtime pay until they reach the maximum level of compensation obtainable by a GG–15 employee. At such time these employees will receive compensatory time off.

To establish the necessary ambiguity that permitted the court to review to the legislative history, plaintiffs took the position, and the court agreed, that the legislative history behind section 305(b) was clear. Plaintiffs may not now attempt to contort this clear legislative history in an manner advantageous to their litigation position. Congress enacted section 305(b) in response to the Comptroller General's hesitation to sanction the award of compensatory time off in lieu of overtime pay. The opinion in which this concern was addressed mentioned those GPO employees paid pursuant to the GPO's version of the general schedule; it made no distinction with respect to the grade of these white-collar employees.

Congress clearly intended to grant the Public Printer the authority to award compensatory time off to white-collar employees paid pursuant to the GPO's version of the general schedule. Congress also made no distinctions with respect to the grade of these employees. Once it obtained this discretionary power, the GPO chose to apply it to certain white-collar employees, but not to others. This decision does not mean that the GPO lacked the discretionary authority to award all white-collar employees compensatory time off. Having possessed the requisite authority since 1970, the GPO may now choose to exercise its power and award white-collar employees such as supervisory

printing specialists compensatory time off in lieu of overtime pay.

This result is also consistent with defendant's compelling argument that if the court were to rule that the GPO's decision to award plaintiffs compensatory time off cannot stand, section 305(b) would be read out of existence. "[A]mendments by implication are disfavored." *Cheney R. Co. v. Railroad Retirement Bd.*, 50 F.3d 1071, 1078 (D.C.Cir. 1995) (citing *United States v. Welden*, 377 U.S. 95, 103 n. 12, 84 S.Ct. 1082, 1088 n. 12, 12 L.Ed.2d 152 (1964)); *Natural Resources Defense Council, Inc. v. Hodel*, 865 F.2d 288, 318 (D.C.Cir.1988). Although the overall statutory scheme addressing the compensation of GPO employees belies a paradigm of clarity, the court must endeavor to not " 'render one part inoperative.' " *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (quoting *Colautti*, 439 U.S. at 392, 99 S.Ct. at 684). By permitting the GPO to exercise the discretionary authority granted to it by Congress, the court has endeavored to avoid frustrating the clearly expressed intent of Congress by reading section 305(b) out of existence.[12]

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion for summary judgment is granted as to supervisory printing specialists and is otherwise denied.

2. Plaintiffs' cross-motion for summary judgment is granted as to group chiefs, assistant forepersons, and forepersons and is otherwise denied.

---

**12.** Plaintiffs have proffered an argument based on 5 C.F.R. § 551.513 (1995), which, they assert, entitles them to overtime pursuant to section 5544(a) regardless of the manner in which the court construes section 305(b). This regulation recognizes an employee's entitlement to the higher of overtime pay under Title 5 or another overtime statute establishing entitlement to overtime pay. Even if each plaintiff is covered by section 305(b), they contend that section 5544(a) still entitles them to compensation. Plaintiffs cite *Alexander v. United States*, 32 F.3d 1571,

1577 (Fed.Cir.1994), for the proposition that in cases where statutes overlap to create alternate overtime entitlements, the aggrieved employees will be compensated to the greatest extent possible. *Alexander* construed 5 C.F.R. § 551.513 as mandating the greater pay, rejecting plaintiffs effort to pyramid the available rates to reach the greatest rate. Although plaintiffs overstate the law, their argument fails because 44 U.S.C. § 305(b) does not establish a competing entitlement.

3. The parties shall file a Joint Status Report by February 20, 1998, proposing a course for further proceedings.